# Campbell v. Commonwealth.

Dec. 5, 1941.

C. A. Noble and Vernon Faulkner for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellant shot and instantly killed Elhanon Jones, a deputy sheriff, while the latter was apparently trying to arrest him. We say "apparently" because no warrant had been issued for appellant's arrest and there is no evidence that Jones knew of the commission of any offense which would have justified appellant's arrest without a warrant, or that Jones informed him of his purpose. Indicted for murder, he was convicted of manslaughter and sentenced to fifteen years' imprisonment. Appealing from that judgment, he urges as grounds for reversal the admission of incompetent testimony; the rejection of competent evidence; the alleged insufficiency of the instructions; and that the verdict was flagrantly against the evidence, and the result of passion and prejudice on the part of the jury.

The killing occurred about 9 o'clock on a Saturday night in February, 1940, at Bill Couch's restaurant in the town of Duane, Kentucky, where appellant had stopped with his wife and two male acquaintances on the way from his home in Breathitt County to a picture show at Hazard. Appellant and his party occupied a booth in the rear of the restaurant, and, after he and his wife had drunk Coca-Cola, the other members of his party had consumed beer and sandwiches, he started for the front door, evidently for the purpose of hurrying their departure. As he opened the door, or was preparing to do so, Jones entered, reached for appellant, and, with his hand outstretched, pursued him to the rear of the building. According to appellant and some of his witnesses, Jones struck at him with his pistol as he entered the door, and when appellant had retreated as far as he could, again struck at him, missing his head but striking his breast and firing a shot which wounded appellant severely. During the retreat appellant repeatedly called upon Couch to come to his aid, and failing to receive assistance, and having retreated as far as he could, was in the act of drawing his pistol when Jones shot, and received in return, from appellant's pistol, the fatal bullet.

According to the Commonwealth's evidence, Jones was unarmed, and some of the witnesses testified that he did no more than walk behind appellant as the latter, after approaching the door, faced about, and in silence, retraced his steps to the rear of the restaurant. After

proceeding thus for some distance, appellant suddenly turned on Jones and shot him twice, over his protest, "don't do that," whereupon, Taylor Jones, the victim's son, shot appellant, inflicting the wound which appellant testified was inflicted by the deceased. In addition, there was testimony of a doubtful character that appellant on one occasion, while purchasing moonshine liquor, had boasted to the vendors that he was going to kill Jones before daylight; and testimony of a more credible nature that on another occasion, Jones, in his capacity as deputy sheriff, had searched appellant; apparently, for concealed weapons, and that appellant had stated that Jones could not arrest him, and that if he ever did so, "one would be to pack off feet foamus." It also appeared that Jones had previously arrested Jim Epperson, one of the two male companions who accompanied appellant to the scene of the killing.

Thus we are confronted with one of the numerous cases in which it is possible to speculate with some degree of assurance as to the motives which precipitated the transaction constituting the subject of the inquiry, but in which it is impossible to determine those motives with certainty. Probably Jones was attempting to search appellant or arrest him for some undisclosed offense, having been apprised by his son, Burton Jones, of appellant's presence in the restaurant. Appellant was probably anticipating the arrest or search, and for that reason was anxious to leave the restaurant, having seen Burton Jones leave shortly after appellant's arrival there. Bill Couch testified that on entering appellant had asked him if "a man would be safe in there." At least there is no other explanation since appellant testified that his relations with deceased had always been friendly. All we can say with certainty is that the evidence was very conflicting, and that the issue was preeminently one for the jury to determine. Gooslin v. Commonwealth, 283 Ky. 665, 142 S. W. (2d) 989.

The complaint that incompetent testimony was heard by the jury over appellant's protest is predicated mainly upon the action of the court in permitting a deputy county clerk to testify that Jones was a deputy sheriff of Perry County at the time of the homicide. It is argued that the jury, in the absence of any instruction on the subject, might have concluded, notwithstanding the absence of any proof that appellant was properly

subject to arrest, that Jones was killed in the performance of his duty as an officer. Attention is called to the fact that if an arrest was actually in process, it was illegal, since Jones failed to inform appellant of his intention to arrest him, or otherwise comply with the requirements of Section 39, Criminal Code of Practice; and decisions of this court are cited to the effect that a citizen is not bound to submit to an illegal arrest, but may resist. However, one about to be illegally arrested may not resist to the extent of taking the officer's life, unless he, himself, is in danger of death or great bodily harm at the hands of his assailant. Roberson's New Criminal Law & Procedure, Section 185. The instructions given by the court did not refer to the deceased as an officer, or touch upon Jones' right to arrest under any circumstances, or upon the extent to which appellant was entitled to resist an arrest, but, in the usual form, merely instructed the jury to acquit the accused if it believed from the evidence that at the time he shot Jones "he had reasonable grounds to believe and in good faith did believe, that the deceased, Elhanon Jones, or Taylor Jones, was then and there about to inflict upon him death, or some great bodily harm, and that to shoot deceased was necessary or seemed to him in the exercise of a reasonable judgment to be necessary, in order to protect himself from said danger, real, or to the said defendant apparent." Thus it would seem that the instructions cured any error which may have been committed in admitting the testimony referred to; but in any event, the error cannot avail appellant in view of the failure of his counsel to object to previously given testimony that Jones was a deputy sheriff and counsel's elaboration of that subject in cross-examining a subsequent witness.

The remaining objectionable testimony was the statement of Jones' widow, in response to a question, that she was the mother of twelve children. Of course, this testimony was incompetent and should not have been admitted as it had no bearing on the circumstances of the homicide, but we are unwilling to believe that the jury, because of the fact thus adduced, reached a verdict it would otherwise not have reached.

The allegedly competent testimony which the court rejected by sustaining an objection thereto after it had been given, consisted of appellant's statement that after he had been carried out of the building and placed in

his car, about five minutes after the shooting, Burton Jones jumped up on the car and said: "G—— D—— you, if you don't hush I will finish you." Obviously, this statement was not part of the res gestae, and threw no light on what had transpired inside the building. Hence, the court was correct in sustaining the objection. The remaining testimony which the court refused to admit was the statement, which the appellant avowed that the witness, Ernest Couch, would have made had he been permitted to answer, that when Jones arrested a "drunk" it was his custom to hit him "kindly" with the barrel of his pistol, and that he had seen him point a pistol at a man during the process of arrest. While this testimony might have indicated that it was likely that Jones may have struck appellant with his pistol, if he was in fact attempting to arrest him at the time he was shot, it was not shown that Jones was in fact attempting to make an arrest, and even if he had been attempting to make an arrest, it does not follow that he would have so used his pistol upon appellant in the circumstances disclosed. We know of no authority for holding the rejected testimony competent, and none has been cited by appellant's counsel.

The only complaint of the instructions is that they should have included Burton Jones and John Petrey among those against whose acts appellant had the right to defend himself if he believed himself to be in danger. Had there been any testimony showing participation in the affray by the individuals referred to, or that they had acted in concert with the deceased, the complaint would be well founded under well-settled principles announced by this court in numerous decisions. See Stanley's Instructions to Juries, Section 900, page 1204. But the extent of the testimony as to the activities of Burton Jones and Petrey was that the former was in the restaurant when appellant entered, and left five or six minutes before his father arrived; that after the trouble was over appellant saw Petrey and Burton Jones come into the room with pistols in their hands; that Taylor Jones came into the restaurant two or three minutes before Elhanon and Burton Jones and went on back to the rear of the building, and that Burton Jones had to be restrained from killing appellant after the tragedy. From this testimony it is surmised by appellant's counsel that Burton Jones went out of the building and informed his father, brother, and Petrey that appellant was in the res-

taurant, and that Taylor then returned and stationed himself in the rear while Elhanon, Burton, and Petrey came in the front to attack the appellant, and that these acts were thus concerted for the purpose of inflicting death or great bodily injury upon him. But the evidence was insufficient to justify this conclusion or an instruction on the subject.

It may be that appellant is the victim of the influences stated in his counsel's brief, but we are powerless to aid him in view of the conflicting testimony and the fact that the court erred neither in its instructions to the jury nor the admission or rejection of testimony.

Judgment affirmed.