COMMONWEALTH of Kentucky,
Petitioner,

v.

Fernando HERNANDEZ–GONZALEZ,
Respondent.

No. 2001–SC–0600–CL.

Supreme Court of Kentucky.

Feb. 21, 2002.

As Modified on Denial of Rehearing
May 16, 2002.

A.B. Chandler III, Atty. Gen., Frankfort, Irvin G. Maze, Jefferson County Atty., Matthew H. Welch, Asst. Jefferson County Atty., Louisville, for Petitioner.

Tommy Jack Smith, Robert Denton Mattingly, Decamillis Law Office, Harry Bernard O'Donnell, Louisville, for Respondent.

## CERTIFICATION OF THE LAW

GRAVES, Justice.

Respondent, Fernando Hernandez–Gonzalez, was arrested for first offense driving under the influence. KRS 189A.010(1)(a). The Jefferson District Court suppressed the results of the blood alcohol test and found Respondent not guilty of DUI, but guilty of reckless driving. The district court concluded that the statutorily required warning required by KRS 189A.105 is inaccurate since a person convicted of first offense DUI may receive only a fine and no mandatory jail time. Thus, the implied consent warning does not apply to all first-time offenders. In accordance with Kentucky Constitution § 115 and CR 76.37(10), the Commonwealth filed a motion for certification of the law. We granted the request for certification of the following question:

> [I]s the Implied Consent Warning read to the Defendant and contained in KRS 189A.105 defective on its face; and, if so does the defect unconstitutionally coerce the Defendant into submitting to a blood

alcohol test under KRS 189A.103, in violation of Defendant's right to due process of law under both the Federal and Kentucky Constitutions?

KRS 189A.105(2)(a) states that prior to the administration of a test for alcohol concentration in the blood the person shall be informed:

That, if the person refuses to submit to such tests, the fact of refusal may be used against him in court as evidence of violation of KRS 189A.010 and will result in revocation of his driver's license, and if the person is subsequently convicted of violating KRS 189A.010(1) then he will be subject to a mandatory minimum jail sentence which is twice as long as the mandatory minimum jail sentence imposed if he submits to the tests . . . .

The penalties for a first offense of driving under the influence are set forth in KRS 189A.010(5):

(a) For the first offense within a five (5) year period, [a person shall] be fined not less than two hundred dollars ($200) nor more than five hundred dollars ($500), or be imprisoned in the county jail for not less than forty-eight (48) hours nor more than thirty (30) days, or both. . . . If any of the aggravating circumstances listed in subsection (11) of this section are present while the person was operating or in physical control of a motor vehicle, the mandatory minimum term of imprisonment shall be four (4) days, which term shall not be suspended, probated, conditionally discharged, or subject to any other form of early release.

Therefore, under the provisions of KRS 189A.010(5), a trial court shall impose a monetary fine or imprisonment of not less than 48 hours in the county jail, or both a fine and imprisonment for conviction of a first-offense DUI. That is, in the absence of an aggravating circumstance there is no requirement of mandatory jail time. For second, third, and fourth offense DUI's, however, both a fine and imprisonment in the county jail are mandated. KRS 189A.010(5)(b)-(d). The Jefferson District Court concluded that because a first time DUI offender may not necessarily be subject to mandatory jail time, warning the person that failure to consent to a blood alcohol concentration test will result in a mandatory minimum jail sentence which is twice as long as the mandatory minimum jail sentence imposed if he submits to the test is unconstitutional in that it essentially coerces the person to submit to the test. We disagree.

Pursuant to the 2000 legislative amendments, KRS 189A.103(1) provides that every person who operates or is in physical control of a vehicle in the Commonwealth *"has* given his consent to one (1) or more tests of his blood, breath, urine, or combination thereof, for the purpose of determining alcohol concentration . . . if an officer has reasonable grounds to believe that a violation of KRS 189A.010(1) or KRS 189.520(1) has occurred." (emphasis added). Prior to the amendments, the statute merely stated that a person was "deemed to have given his consent." The 2000 amendment of the statute to read "has given his consent" makes it unmistakable that a suspected drunk driver must submit to a test to determine blood alcohol concentration.

As suggested by its name, the "implied consent" statute begins with the premise that all persons driving on the public highways of this Commonwealth have consented to a blood, breath, or urine test pursuant to a statutorily prescribed procedure. The legal theory of implied consent was developed by the United States Supreme Court in *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091(1927). In *Hess,* a resident plaintiff brought suit against an out-of-state defendant as a re-

sult of an automobile accident in the forum state. In dispensing with the requirement that a nonresident defendant must be found in the forum state before he could be sued, the Court reasoned that because the state had the right to prohibit a non-resident motorist from using its highways, the state could condition the use of its highways by finding that a nonresident motorist had impliedly consented to being sued within the jurisdiction. *Id.* at 356–357, 47 S.Ct. at 633.

Soon after *Hess,* states began recognizing that they had an analogous power to prohibit drinking drivers from using their highways. State legislatures determined that they could condition the use of state highways upon a driver's implied consent to submit to a test for blood alcohol concentration in much the same way that a state could condition an out-of-state driver's right to use its highways upon the driver giving his implied consent to being sued in the forum state. This theory of a driver's implied acquiescence to chemical testing was subsequently upheld by the United States Supreme Court against a Fourteenth Amendment challenge in *Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), and against Fourth, Fifth, and Fourteenth Amendment challenges in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

In *Schmerber,* the United States Supreme Court upheld the admission of the results of a chemical analysis of a sample of blood taken involuntarily from the body of the defendant at the direction of a police officer after the defendant's arrest for driving while under the influence. The Court concluded that such did not violate the defendant's privilege against self-incrimination; did not deny the defendant due process since there was ample justification for the police officer's conclusion

that the defendant was under the influence of alcohol; did not violate the defendant's right to counsel, even when such sample of blood was taken against the advice of counsel; and did not constitute an unreasonable search and seizure, notwithstanding that the sample was taken without a warrant, where the police officer was justified in requiring the test and manner in which the test was performed was reasonable.

In *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the United States Supreme Court again dealt directly with the rights of a suspected drunk driver and held that the Fifth Amendment did not bar admission of the defendant's refusal because the refusal was not coerced within the meaning of the Fifth Amendment. *Id.* at 564, 103 S.Ct at 923. The Court also did not find it fundamentally unfair under the Fourteenth Amendment to admit the refusal even though the arresting officer failed to warn the defendant about the statutory consequences of his refusal. The following excerpt is illustrative:

> [G]iven, then, that the offer of taking a blood-alcohol test is clearly legitimate, the action becomes no *less* legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice. Nor is this a case where the State has subtly coerced respondent into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants respondent to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test.

*Id.* at 563–564, 103 S.Ct. at 922.

Recently, in *Commonwealth v. Wirth,* Ky., 936 S.W.2d 78 (1996), this Court inter-

preted the prior version of KRS 189A.103, and firmly established that a suspected drunk driver has a duty to submit to blood alcohol testing:

> In addition, we wish to correct what appears to be a widespread misinterpretation of the statute. By virtue of KRS 189A.103, one who operates a motor vehicle consents to a test of his blood, breath or urine for the purpose of determining alcohol concentration, The phrase "no person shall be compelled" in KRS 189A.105 could not rationally have been intended to contradict the consent provisions of KRS 189A.103. A more reasonable interpretation of the language used is that one who refuses will not be physically forced to submit to a chemical test. It does not mean that such person has a lawful right to refuse such testing.

*Id.* at 82.

Under Kentucky law, one who refuses to submit to a blood alcohol concentration test faces numerous personal consequences, including pretrial suspension of the defendant's driver's license (KRS 189A.105); a longer suspension period (KRS 189A.107), imposition of a suspension even if acquitted on the underlying charge (KRS 189A.107(2)), and no hardship privileges (KRS 189A.410(2)). A potentially longer jail sentence is simply another consequence of a defendant's refusal. If a person refuses to submit to the test, there may still be sufficient evidence for a conviction, and his license will be suspended even if acquitted on the DUI charge. If a person takes the test, there may still not be sufficient evidence for a conviction and his license will not be suspended if acquitted. It is problematic whether a person is incriminated more by taking the test than by refusing the test.

The present warning, as set forth in KRS 189A.105(2)(a), informs a person of the potential consequences of refusing a test for blood alcohol concentration. The penalty for refusal varies and is dependent upon the penalty that would otherwise be imposed. The statutory language does not state that a defendant will, in all cases, be sentenced to mandatory jail time if he refuses the test, but rather informs the defendant that if he refuses to consent to the breath test, and if there is mandatory jail time for the underlying offense, then he will be sentenced to twice that amount of jail time. Through the use of the language, "will be subject to a mandatory minimum jail sentence which is twice as long as the mandatory minimum jail sentence imposed if he submits to the tests . . . ," the implied consent warning makes it clear that the penalty for refusal is conditioned upon whether conviction of the underlying offense would result in a mandatory minimum jail sentence had the defendant not refused to submit to the test.

The implied consent warning in KRS 189A.105 is defective as applied to those suspected drunk drivers not necessarily subject to minimum jail time; however, this defect does not rise to a violation of a constitutional right. Although the officer did not correctly educate Respondent in this case on the consequences of refusal, the warning neither offered implicit assurances that Respondent would not be subject to jail if he consented to the test, nor guaranteed jail time if he refused. It merely informed him of the possibility of additional jail time should such be mandated for the underlying DUI offense. Furthermore, as consent is implied by law, one cannot claim coercion in consenting to a test. While the statutory warning may be inaccurate in some circumstances, the duty to submit to testing is foremost under the statutory scheme. Thus, the implied consent warning contained in KRS 189A.105 is not so defective as to prejudice, as a mat-

ter of law, a suspected drunk driver's decision-making process since there is no constitutional right to refuse to submit to a test to determine blood alcohol concentration.

Accordingly, the law is so certified.

All concur.

JOHNSTONE, J., not sitting.