**Lester E. COOK, Jr., Appellant,**

v.

**COMMONWEALTH OF KENTUCKY,
Appellee.**

**No. 2002–SC–0486–MR.**

Supreme Court of Kentucky.

March 18, 2004.

---

[27]. *Abbott,* 822 S.W.2d at 420 (citations omitted) (Leibson, J., dissenting).

Ron Reynolds, Williamsburg, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, William Robert Long, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

On August 20, 2001, Billy Joe and Lisa Rains were standing in the front yard of their home on Bee Creek Road in Whitley County, Kentucky, when a 1984 Chevrolet Corvette automobile operated by Appellant, Lester E. Cook, Jr., drove into their yard, striking and killing Mrs. Rains. Appellant was subsequently convicted by a Whitley Circuit Court jury of wanton murder, KRS 507.020(1)(b), and sentenced to imprisonment for life. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), contending that the trial court erred by: (1) overruling his motion to exclude for cause all jurors who had been exposed to media reports about the incident; (2) failing to suppress his blood alcohol test results; (3) allowing the Commonwealth to introduce evidence of his refusal to take a blood alcohol test; (4) permitting the Commonwealth to introduce evidence that the victim was pregnant at the time of her death; (5) overruling his motion for a directed verdict of acquittal; and (6) permitting the Commonwealth to introduce evidence of a previous conviction that had been set aside. He also asserts that KRS 507.020(1)(b) is unconstitutionally vague. We now affirm Appellant's conviction but vacate his sentence and remand for a new penalty phase trial.

On the day Mrs. Rains was killed, Appellant and his neighbor, Otis Earls, Jr., had driven to Jellico, Tennessee, where they purchased two cases of beer and "three or six" bottles of malt liquor. According to Earls, the only witness who testified to Appellant's activities prior to the fatal collision, Appellant placed the alcohol in the back of his pickup truck and stated, "If we can't wait till we get home to drink them, we don't need to be drinking." The two men returned to Appellant's residence around 3:30 p.m. and each drank a beer. Appellant's girlfriend, Annette Miller, later arrived and she and Appellant stayed inside the house for approximately an hour and a half while Earls mowed Appellant's lawn. Earls did not know whether Appellant consumed any alcohol while inside the house. Appellant and Miller then left the premises for another hour to an hour and a half. They left two bottles of beer for Earls to drink. Earls did not think Appellant took any alcohol with him and did not know whether Appel-

lant consumed any alcohol during this absence.

Appellant and Miller returned to Appellant's residence around 6:00 p.m., and they and Earls each drank two more beers. Miller then asked Appellant to go to a store and purchase some cigarettes for her. Appellant and Earls proceeded to the Corvette, each carrying another beer. Earls testified that he had personally observed Appellant consume three or four beers prior to that point in time.

Upon reaching Bee Creek Road, Appellant told Earls he was going to "show him what his car had," then spun the car's tires and began speeding. According to Earls, Appellant was driving so fast that he (Earls) feared that "if he didn't slow down, we would wreck." As they entered a curve, Appellant lost control of the vehicle, which then struck a guardrail, tearing the bead off the rim of one of the tires, which propelled the car off of the roadway, through a ditch, and into the Rainses' front yard. The Commonwealth's accident reconstructionist, Kentucky State Police Trooper James Trosper, estimated that Appellant's car was traveling between 48 and 49 miles per hour when it entered the ditch. The speed limit was 55 miles per hour.

Appellant's car struck Mrs. Rains from behind, throwing her onto the hood of the car, and into the air, from where she fell to the ground, rolled over a number of times and came to rest on her back. Two neighbors, Kelly Centers and Donna Mahan, were soon on the scene. Centers attempted cardiopulmonary resuscitation (CPR) but Mrs. Rains never resumed breathing. She was transported to Baptist Regional Medical Center in Corbin where she was pronounced dead.

Deputy Christopher Stack of the Whitley County Sheriff's Department was one of the first police officers to arrive on the scene. He subjected Appellant to several field sobriety tests and testified that Appellant failed them all. A videotape of Appellant's efforts during these tests was played at trial and a jury could fairly conclude from viewing the videotape that Appellant was intoxicated. Stack arrested Appellant and transported him to Baptist Regional Medical Center to obtain blood and urine samples in order to test for alcohol or drugs.

At the hospital, Stack read Appellant the implied consent warning required by KRS 189A.105(2)(a). Appellant stated that he would not give a blood sample until he had spoken with an attorney. Stack informed Appellant that he could not speak to an attorney unless he submitted to the test. When Appellant declined to submit to the test, Stack asked Kentucky State Police Trooper David Lassiter to obtain a search warrant. Lassiter prepared an affidavit, obtained the warrant from a judge, brought it to the hospital and served it on a phlebotomist who withdrew a sample of blood from Appellant's arm. The sample was taken approximately four hours and forty-five minutes after the collision. A test of the sample revealed a blood alcohol concentration of 0.09 grams per 100 milliliters. *See* KRS 189A.005(1). The Commonwealth's expert, Dr. Greg Davis, estimated by back-extrapolation that Appellant's blood alcohol concentration at the time of the collision would have been between 0.16 and 0.185 grams per 100 milliliters.

## I. PRETRIAL PUBLICITY.

Prior to trial, two Corbin newspapers and one Lexington newspaper published a total of twelve articles about the case. Most of the articles mentioned that Mrs. Rains was four weeks pregnant at the time of her death, and several detailed Appellant's past illegal conduct, including driv-

ing under the influence of alcohol (DUI) and domestic violence charges. A few articles described a fatal accident in 1971 following which Appellant pled guilty to DUI and involuntary manslaughter in the first degree. Appellant argues that the trial court erred in refusing to strike for cause all jurors who had read any articles about the case. The trial judge overruled the motion but permitted individual voir dire of any juror who admitted having any prior knowledge of the case. He excused for cause every juror who admitted to having already formed an opinion about the case and every juror who remembered reading about the 1971 case. Of the twelve persons selected for the final jury, five had read newspaper accounts of Mrs. Rains's death but none had formed an opinion as to Appellant's guilt or innocence or knew of the 1971 incident.

A criminal defendant has the right to an impartial and unbiased jury. RCr 9.36(1); *Butler v. Commonwealth*, Ky., 387 S.W.2d 867, 868 (1965). However, the party alleging bias bears the burden of proving that bias and the resulting prejudice. *Caldwell v. Commonwealth*, Ky., 634 S.W.2d 405, 407 (1982) (citing *Watson v. Commonwealth*, Ky., 433 S.W.2d 884 (1968)). No implied bias arises from mere juror exposure to information about the case; rather it must be shown that the exposure actually biased the juror. *Gould v. Charlton Co.*, Ky., 929 S.W.2d 734, 739 (1996). As stated in *McQueen v. Scroggy*, 99 F.3d 1302 (6th Cir.1996):

> There is no per se rule that mere exposure to media reports about a case merits exclusion of a juror. To the con-

trary, in order to merit disqualification of a juror, the media reports must engender a predisposition or bias that cannot be put aside, requiring the juror to decide a case one way or the other. *Id.* at 1319.

The decision whether to excuse a juror for bias lies within the sound discretion of the trial court. *Grooms v. Commonwealth*, Ky., 756 S.W.2d 131, 134 (1988). The trial judge did not abuse his discretion in this case. He conducted individual voir dire of each juror who had prior knowledge of the case and excluded anyone who knew about Appellant's previous accident or had already formed an opinion as to his guilt. He did not attempt to rehabilitate jurors by, *e.g.*, inquiring whether they could put their knowledge or opinions aside and render a fair verdict on the evidence. *Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713, 717–18 (1991). As the law only requires impartial jurors, not ones who are ignorant or uninformed, a trial judge is not required to strike for cause jurors who have some information about the case but have not yet formed an opinion as to its outcome. *McQueen, supra*, at 1320; *Furnish v. Commonwealth*, Ky., 95 S.W.3d 34, 45 (2002); *Bowling v. Commonwealth*, Ky., 942 S.W.2d 293, 299 (1997) (citing *Mabe v. Commonwealth*, Ky., 884 S.W.2d 668 (1994)).

## II. BLOOD ALCOHOL TEST RESULTS.

Appellant asserts that his blood alcohol test results should have been suppressed because Stack refused his request to contact an attorney prior to testing.[1] Stack

---

1. Appellant does not claim here that the blood alcohol results should have been suppressed on relevancy grounds. However, no one testified to the legal presumptions established in KRS 189A.010(3), presumably because they are inadmissible when a defendant is charged

with homicide. *Walden v. Commonwealth*, Ky., 805 S.W.2d 102, 103 (1991), *overruled on other grounds by Commonwealth v. Burge*, Ky., 947 S.W.2d 805, 811 (1996); *Overstreet v. Commonwealth*, Ky., 522 S.W.2d 178, 179 (1975). Nor did any witness attempt to testify

testified that he brought Appellant to the hospital between 8:00 and 9:00 p.m. on August 20, 2001, and read Appellant the implied consent warning pursuant to KRS 189A.105(2)(a). Appellant expressed his desire to consult with an attorney prior to taking the blood test but Stack refused. Stack described the conversation as follows:

A: He just told me he didn't want to take the test until he talked to his lawyer.

Q: So, when he asked you for a lawyer you took that as a refusal. Is that correct?

A: No. Then I said he don't get a lawyer unless you take my test and he said, well, I'm not taking your test.

Q: So, if you take the test you get a lawyer and if you don't take the test you don't get a lawyer. Is that right?

A: Yes. It's in the implied consent.

Stack either seriously misconstrued the meaning of the implied consent statute or was unaware that it had been recently amended. KRS 189A.105(3), effective October 1, 2000, provides:

During the period immediately preceding the administration of any test, the person shall be afforded an opportunity of at least ten (10) minutes but not more than fifteen (15) minutes to attempt to contact and communicate with an attorney and shall be informed of this right. Inability to communicate with an attorney during this period shall not be deemed to relieve the person of his obligation to submit to the tests and the penalties specified by KRS 189A.010 and 189A.107 shall remain applicable to the person upon refusal. Nothing in this section shall be deemed to create a right

to have an attorney present during the administration of the tests, but the person's attorney may be present if the attorney can physically appear at the location where the test is to be administered within the time period established in this section.

(Emphasis added.) Therefore, Stack's contention that Appellant could not contact an attorney until and unless he agreed to take the test was erroneous. The statute clearly provides that a person has a right to at least attempt to contact an attorney *before* the administration of the test. Appellant asserts that this violation of KRS 189A.105(3) requires suppression of the blood test results. This would be a better argument if he had actually consented to the blood tests and was claiming that the violation of the statute negated his consent. *See, e.g., Copelin v. State,* 659 P.2d 1206, 1214 (Alaska 1983) (application of exclusionary rule to evidence obtained in violation of right to counsel provided in implied consent law "will serve to deter future illegal police conduct"); *State v. Juarez,* 161 Ariz. 76, 775 P.2d 1140, 1145 (1989) (en banc) (police refusal to permit DUI arrestee to consult counsel before consenting to breath test violates constitutional right to counsel); *State v. Spencer,* 305 Or. 59, 750 P.2d 147, 156 (1988) (same). *But see Beach v. Commonwealth,* Ky., 927 S.W.2d 826, 828 (1996) ("[E]vidence should not be excluded for the violation of provisions of a statute where no constitutional right is involved.") (interpreting KRS 189A.103(5)). *C.f. Gilbert v. California,* 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967) (taking of handwriting exemplars not critical stage of criminal proceedings entitling defendant to assistance of counsel).

to the *effect* that a particular blood alcohol level might have had on Appellant's ability to

operate a motor vehicle.

However, the issue here is not whether Stack's error negated Appellant's consent, for Appellant did not consent to the taking of his blood sample. Rather, the sample was obtained involuntarily pursuant to a search warrant. KRS 189A.105(2)(b) reads:

Nothing in this subsection shall be construed to prohibit a judge of a court of competent jurisdiction from issuing a search warrant or other court order requiring a blood or urine test, or a combination thereof, of a defendant *charged with a violation of KRS 189A.010, or other statutory violation arising from the incident,* when a person is killed or suffers physical injury, as defined in KRS 500.080, as a result of the incident in which the defendant has been charged.

(Emphasis added.) Thus, a warrant may issue under this statute if the accused is charged with a qualifying offense which resulted in death or physical injury. *Commonwealth v. Morriss,* Ky., 70 S.W.3d 419, 421 (2002). At the conclusion of the field sobriety tests the videotape clearly records Stack advising Appellant, "You are under arrest for DUI." Although the subsequent arrest citation prepared by Stack charged Appellant not with DUI but with murder in violation of KRS 507.020(1)(b), he was charged with violating KRS 189A.010 at the time the search warrant was obtained. Even if he had been charged with murder, that offense would qualify as an "other statutory violation arising from the incident." KRS 189A.105(2)(b). Since Mrs. Rains died as a result of the incident, either charge authorized the issuance of the search warrant. The statute does not condition the issuance of the warrant on the arrestee's refusal to consent to the blood test.[2] Obviously, once the warrant was served, the blood sample could be drawn with or without Appellant's consent. Thus, the refusal to grant Appellant's request to contact an attorney resulted in no prejudice in this case. Other than refusing to take the test, Appellant made no incriminating statements while at the hospital. An attorney could only have advised Appellant whether to consent to the blood test. Once the warrant was served, the consent issue became moot. Even though Stack's refusal to allow Appellant to attempt to contact an attorney was wrongful, the error was rendered harmless by the issuance of the warrant and did not require suppression of the blood test results.

Appellant's secondary claim with respect to the blood test is that the results should have been suppressed because of Stack's alleged "perjury" about the events leading to the administration of the test. While Stack testified at the pretrial suppression hearing that he did not remember whether he had placed Appellant under arrest at the scene and testified at trial that he had not done so, the videotape of the field sobriety tests clearly shows that Stack placed Appellant "under arrest for DUI" at the conclusion of those tests. However, Stack's erroneous testimony does not rise to the level of perjury. Perjury requires proof that a person made a materially false statement which that person did not believe. KRS 523.020(1). There is no proof that Stack did not believe what he was saying during the suppression hearing or at trial was true. Thus, we are unable to conclude that his testimony was perjurious as opposed to merely mistaken. We also are unable to perceive how Appellant was prejudiced by this testimony.

2. Even if Appellant had not been charged with a qualifying offense, Lassiter could have obtained a search warrant subject to conventional search and seizure principles. *Morriss, supra,* at 421.

## III. EVIDENCE OF APPELLANT'S REFUSAL.

Appellant asserts that it was error to admit evidence that he refused to take the blood alcohol test. At trial, this refusal was mentioned in Stack's testimony when he described why he called Lassiter to obtain a search warrant and also during Stack's cross-examination during which he stated that he interpreted Appellant's statement that he would not take the test until he had contacted his attorney as a refusal. Lassiter also testified to the refusal when he described the telephone call he received from Stack advising that Appellant had refused the tests and asking Lassiter to obtain a warrant. The prosecutor briefly mentioned the refusal in his opening statement when describing the sequence of events and again in his closing argument as evidence of Appellant's own knowledge that he was intoxicated.

KRS 189A.105(2)(a)(1) requires that the arrestee be advised *inter alia:* "That, if the person refuses to submit to such tests, the fact of this refusal may be used against him in court as evidence of violating KRS 189A.010." Of course, Appellant was neither indicted for nor convicted of violating KRS 189A.010. And KRS 189A.105(2)(a)(1) does not purport to establish a rule of evidence but only recites what an arrestee must be advised before a refusal can be considered voluntary. Nevertheless, Appellant's operation of a motor vehicle while intoxicated was a primary fact relied upon by the Commonwealth to prove the aggravated wantonness element of wanton murder. Obviously, an implied admission of intoxication as evidenced by a refusal to submit to a blood alcohol test is highly relevant evidence that the person refusing the test is intoxicated. The issue becomes whether the refusal was voluntary.

In order for there to be a refusal, there must first be a specific request that the person take the test, not just an inquiry whether the person would like to take it. *Commonwealth v. Powers,* Ky., 453 S.W.2d 260, 262–63 (1970) (interpreting former implied consent statute, KRS 186.565). Stack's request satisfied this requirement. In addition to a valid request, there must also be a positive refusal to take the test. This refusal can be express or implied by conduct. *Commonwealth v. Hayden,* Ky., 484 S.W.2d 97, 99 (1972). Appellant refused to take the test but only because he was denied the right to contact an attorney. The only remaining issue is whether Stack's violation of KRS 189A.105(3) in refusing Appellant's request to contact an attorney before taking the test rendered the refusal involuntary, thus inadmissible as evidence of his intoxication. This is an issue of first impression in Kentucky.

Two states have held that when a person is wrongfully denied the right to contact counsel prior to submitting to blood alcohol testing and subsequently refuses to take the test, there is no valid refusal. It was held in *Kuntz v. State Highway Comm'r,* 405 N.W.2d 285 (N.D. 1987), that if an arrestee is denied the statutory right to counsel prior to submitting to a blood alcohol test, failure to take the test is not viewed as a refusal for purposes of revoking that person's driver's license. *Id.* at 290. The Missouri Court of Appeals held in *Brown v. Dir. of Revenue,* 34 S.W.3d 166 (Mo.Ct.App.2000), that a refusal is invalid for purposes of revoking driving privileges if the arrestee was denied his statutory right to contact an attorney. *Id.* at 175. We agree. As Stack's request that Appellant take the test did not meet the requirements of KRS 189A.105(3), and Appellant's refusal was expressly predicated upon the denial of his statutory right to counsel, his refusal was involuntary and should not have been ad-

mitted as evidence of his intoxication. The Commonwealth's assertion that KRS 189A.105(3) does not apply to Appellant because he was not under arrest is patently false. In the first place, the statute does not condition the right to contact an attorney on whether the person has been formally arrested. Secondly, as evidenced by the videotape of the field sobriety tests, Stack had, in fact, placed Appellant "under arrest for DUI."

■ However, the error in admitting Appellant's refusal as evidence of his intoxication was harmless beyond a reasonable doubt. The evidence of Appellant's intoxication at the time of the collision was overwhelming. In addition to Earls's testimony as to Appellant's drinking, Appellant admitted to Stack that he had been drinking "basically all day." Mr. Rains testified that Appellant smelled of alcohol at the scene. Centers testified that she could smell the alcohol on Appellant from nine feet away, that Appellant's eyes were only half open and "very bloodshot," and that he was "very well intoxicated." Mahan testified that Appellant smelled strongly of alcohol and was unsteady on his feet. Stack testified that Appellant smelled of alcohol and that his speech was "very slurred." Finally, the videotape of the field sobriety tests permitted the jurors to observe Appellant's condition for themselves. Considering the evidence as a whole, we are unable to conclude that the result of this case would have been different had the evidence of Appellant's refusal to take the blood test been excluded. RCr 9.24; *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949, 952 (1969), *overruled on other grounds by Blake v. Commonwealth*, Ky., 646 S.W.2d 718 (1983).

## IV. EVIDENCE OF THE VICTIM'S PREGNANCY.

Appellant asserts that it was error for the trial judge to permit the Common-wealth to introduce evidence that Mrs. Rains was pregnant at the time of her death. Mr. Rains testified as follows:

Q: And that evening around 7:30 or so tell the jury what you and your wife were doing.

A: I had just gotten home from getting the dogs some food and she was on the phone talking to her mother and she wanted to go for a walk. She liked to walk and needed some exercise and we had come out of the house to go for a walk and we were discussing the baby and doing some remodeling to the house.

Q: You say baby. You didn't have any kids then, did you?

A: No. We'd been trying for eight years.

Q: And you say baby. Was your wife pregnant?

A: We'd just found out she was pregnant.

In addition to this brief colloquy, a coroner's report introduced as a Commonwealth's exhibit contained a typewritten "Yes" in a box containing the question, "[W]as there a pregnancy in the past 12 months?" This evidence was not mentioned again during the trial and was not mentioned during either of the prosecutor's closing arguments. Appellant's only claim at trial was that the probative value of the evidence was substantially outweighed by the danger of its undue prejudice. KRE 403. On appeal, he asserts that the jury may have punished him for killing two persons instead of only one.

■ The outcome of a KRE 403 balancing test is within the sound discretion of the trial judge, and that decision will only be overturned if there has been an abuse of discretion, *i.e.*, if the trial judge's ruling was arbitrary, unreasonable,

unfair, or unsupported by sound legal principles. *Commonwealth v. English*, Ky., 993 S.W.2d 941, 945 (1999) (citations omitted). We have held many times that it is not an abuse of discretion to admit evidence that "humanizes," as opposed to "glorifies," the victim. *See McQueen v. Commonwealth*, Ky., 669 S.W.2d 519, 523 (1984) ("It would, of course, behoove the appellant to be tried for the murder of a statistic, but we find no error in bringing to the attention of the jury that the victim was a living person, more than just a nameless void left somewhere on the face of the community."). *See also Foley v. Commonwealth*, Ky., 953 S.W.2d 924, 937 (1997) (no error results when victim is presented as more than a statistic); *Bowling v. Commonwealth*, 942 S.W.2d at 302–03 (same). This brief reference to the victim's pregnancy did not unduly prejudice Appellant. The prosecutor did not excessively expound on it, nor was it mentioned in either the guilt phase or penalty phase arguments. Evidence that the victim was a parent, even when irrelevant, has been deemed harmless error. *Nickell v. Commonwealth*, Ky., 565 S.W.2d 145, 147 (1978) (number of children that victim had is irrelevant, but not prejudicial); *Campbell v. Commonwealth*, 289 Ky. 34, 157 S.W.2d 729, 731 (1941) (same). Testimony about each victim's life, occupation, marital status, and number of children, which consumed about five minutes for each victim, was held in *Foley, supra*, not to be reversible error. *Id.* at 937. More specifically, we and our predecessor court have held that evidence that a murder victim was pregnant was relevant to whom and what she was at the time of her death. *Parrish v. Commonwealth*, Ky., 121 S.W.3d 198, 203 (2003); *Wheeler v. Commonwealth*, Ky., 121 S.W.3d 173, 181 (2003); *Burnett v. Commonwealth*, 172 Ky. 397, 189 S.W. 460, 462 (1916) ("The physical and mental conditions and all circum-

stances surrounding the parties at the time were necessarily competent on the trial of this case.").

As for Appellant's double-murder theory, the instructions clearly informed the jury that Appellant could be convicted only of killing Mrs. Rains. We find no abuse of discretion in the limited admission of evidence that the victim was pregnant at the time of her death.

## V. SUFFICIENCY OF EVIDENCE OF WANTON MURDER.

▇▇▇▇▇ Appellant asserts it was error to deny his motions for a directed verdict of acquittal on the primary offense of wanton murder, arguing that the prosecution did not adequately prove the aggravating factor that he acted under circumstances manifesting extreme indifference to human life. A person is guilty of wanton murder when:

> Including, but not limited to, the operation of a motor vehicle under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person.

KRS 507.020(1)(b). The term "wantonly" as used in this statute was clarified in *Elliott v. Commonwealth*, Ky., 976 S.W.2d 416 (1998). "The definition[ ] of 'wantonly' ... make[s] no reference to the defendant's state of mind with respect to his conduct, but refer[s] only to his state of mind with respect to the result of that conduct or to the circumstance which prompted the conduct." *Id.* at 419. So, "[e]ven though he did not intend to kill, if he was aware of and consciously disregarded a substantial and unjustifiable risk that his conduct would result in the death of another person, he is guilty of second-degree manslaughter or, if accompanied by the statutory aggravating circumstances,

wanton murder." *Id.* The decision as to whether the aggravating circumstances (extreme indifference to human life and grave risk of death to another) were present is best left to the jury to decide. *Brown v. Commonwealth,* Ky., 975 S.W.2d 922, 924 (1998) (citing *Walden v. Commonwealth, supra* note 1, at 105); *Nichols v. Commonwealth,* Ky., 657 S.W.2d 932, 935 (1983)). A directed verdict on a charge of wanton murder is proper only when the evidence is insufficient to permit a reasonable juror to believe that the defendant acted with extreme indifference to human life. *Estep v. Commonwealth,* Ky., 957 S.W.2d 191, 193 (1997).

> [Wantonness] ... presupposes an awareness of the creation of substantial homicidal risk, a risk too great to be deemed justifiable by any valid purpose that the actor's conduct serves. Since risk, however, is a matter of degree and the motives for risk creation may be infinite in variation, some formula is needed to identify the case where [wantonness] should be assimilated to [intention]. The conception that the draft employs is that of extreme indifference to the value of human life. The significance of [intention] is that ... it demonstrates precisely such indifference. Whether [wantonness] is so extreme that it demonstrates similar indifference is not a question that, in our view, can be further clarified; it must be left directly to the trier of facts.

KRS 507.020 (1974 Commentary) (quoting Model Penal Code § 201.2 cmt. 2 (Tent. Draft No. 9 1959)).

▇▇▇ There was sufficient evidence here for the trier of fact to find that Appellant acted wantonly under circumstances manifesting extreme indifference to human life. *Walden, supra,* held that evidence of the defendant's intoxication and extreme rate of speed was sufficient to support a conviction of wanton murder by vehicular homicide. *Id.* at 104–05. The defendant's level of intoxication at the time of the accident is a significant factor in considering whether the evidence was sufficient to support a murder charge. *Hamilton v. Commonwealth,* Ky., 560 S.W.2d 539, 542 (1977) (citations omitted). As noted, *supra,* there was substantial evidence in this case that Appellant was intoxicated at the time of the accident. And there was evidence, *i.e.,* the statement Appellant made to Earls in Jellico, Tennessee, that Appellant was well aware of the risk of driving while intoxicated. There was also evidence that Appellant was driving his vehicle at a high rate of speed when he lost control and struck the guardrail. Earls testified that Appellant told him he was going to show Earls "what his car had," spun the tires, and drove so fast that Earls feared there would be an accident. Centers testified that she heard Appellant's vehicle approaching and estimated its speed at 65 to 70 miles per hour. Trosper estimated the vehicle was still going 48 to 49 miles per hour when it went into the ditch after striking the guardrail. On a motion for directed verdict, the court must draw all fair and reasonable inferences in favor of the Commonwealth, as questions of credibility and weight of the evidence are matters for the jury. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186, 187 (1991). There was evidence in this case of both intoxication and excessive speed from which a jury could reasonably infer an extreme indifference to human life. Appellant was not entitled to a directed verdict of acquittal.

## VI. CONSTITUTIONALITY OF KRS 507.020(1)(b).

▇▇▇ Appellant asserts that the wanton murder statute, KRS 507.020(1)(b), is unconstitutionally vague. He incorrectly argues that "wantonness" is the equivalent of

intent (no one claims Appellant intended to kill Mrs. Rains) whereas "indifference to human life" indicates a lack of intent, and that this vague language neither gives adequate notice of what conduct is prohibited nor provides clear standards to law enforcement officers. We rejected a similar challenge to this statute in *Brown v. Commonwealth, supra.* The appellant in *Brown* also argued that the legislature failed to establish standards for applying the statute and that the jury was left to decide each case on an individual basis. We held that the phrase "extreme indifference to human life" contained words of common understanding and, thus, the statute was not void for vagueness. *Id.* at 925. Our views in that regard have not changed.

## VII. PRIOR CONVICTION.

Appellant's final argument is that the trial court erred by allowing the Commonwealth to introduce evidence of his 1971 convictions during the penalty phase of the trial. Those convictions, pursuant to Whitley Circuit Court indictment number 000391, were for DUI (first offense), an offense punishable at that time only by fine, KRS 189.520(2), KRS 189.990(10) (1970 statute versions), and involuntary manslaughter in the first degree, a felony punishable by one to fifteen years imprisonment. KRS 435.022(1), *repealed by* 1974 Ky. Acts, ch. 406, § 336. The record of indictment number 000391 reflects that Appellant pled guilty to both charges on February 3, 1972. A court order signed by Judge Pleas Jones and entered that same day further recites:

> The Court postpones the entry of the judgment on each of these pleas until the 18th day of April, 1972, at which time this defendant is directed to appear in the event he is not accepted in the military service.

It was stipulated at trial that Appellant was accepted into the United States Air Force in April 1972. The record does not indicate that any sentence was ever imposed for these offenses. There is a partially legible handwritten notation on the case jacket that reads either, "Sentence & probation & Deferred" or "Sentence & probation & Defer, J." The notation is not signed and its author is not identified. We are unable to determine its origin or to construe its meaning. Next to this notation are two other handwritten entries that read:

> I hereby dismiss the within indictment because there is insufficient evidence to sustain conviction.
>
> This 15 day of 11, 1974.
>
> /s/ Garrett [illegible]
>
> Commonwealth Attorney
>
> 11–15–74 Motion to dismiss sustained.
>
> /s/ J.B. Johnson, Jr.
>
> Judge, W.C. C.

Judge Johnson also signed and entered a typewritten order dismissing the indictment dated "October [sic] 15, 1974." Appellant's guilty pleas to these offenses were admitted during the penalty phase of the trial under the authority of KRS 532.055(2)(a)(2), which authorizes evidence of "The nature of prior offenses for which he was convicted." Technically, Appellant's pleas of guilty to the two 1971 offenses were "convictions."

> The word [conviction] generally means the ascertainment of defendant's guilt by some legal mode and an adjudication that the accused is guilty. This may be accomplished by a confession by the accused in open court, a plea of guilty or a verdict which ascertains and publishes the fact of guilt. We believe in the majority of those cases and in the majority of jurisdictions (although we have

LAMBERT, C.J.; JOHNSTONE, STUMBO, and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs by separate opinion with GRAVES, J., joining that concurring opinion.

KELLER, Justice, Concurring.

I concur in the result reached by the majority opinion, but write separately as to Part II (Blood Alcohol Test Results). Although I agree with the majority opinion's bottom-line Part II conclusion, *i.e.*, that Deputy Stack's wrongful refusal of Appellant's request to contact an attorney before the administration of the blood test "was rendered harmless by the issuance of the warrant and did not require suppression of the blood test results[,]"[1] I emphatically disagree with the majority's suggestion that Appellant's claim for suppression of the blood test results "would be a better argument if he had actually consented to the blood tests and was claiming that the violation of the statute negated his consent."[2] Of course, the majority's commentary regarding a hypothetical factual situation wholly distinct from the one actually presented in the case at bar is nothing more than *obiter dictum*. My primary concern, however, is that the *obiter dictum* in question is also inaccurate. This theoretical "better argument" for suppression of alcohol concentration results—which, as I understand it, would be premised upon a claim that the suspect's decision to submit to testing was involuntary because of a denial of KRS 189A.105(3)'s statutory right to counsel—would be no "better" than,

and, in fact, would be just as deficient as, Appellant's own argument.

Just two years ago, in *Commonwealth v. Hernandez–Gonzalez*,[3] this Court shut the door on this allegedly "better argument" when we recognized that a DUI suspect has already impliedly consented to "one (1) or more tests of his blood, breath, and urine, or combination thereof"[4] simply by operating a vehicle within Kentucky "if an officer has reasonable grounds to believe that a violation of KRS 189A.010(1) or 189.520(1) has occurred."[5] This Court observed in *Hernandez–Gonzalez* that "[t]he 2000 amendment of [KRS 189A.103(1) ] to read 'has given his consent' makes it unmistakable that a suspected drunk driver must submit to a test to determine blood alcohol concentration."[6] We thus held that inaccuracies in the "pre-testing warnings" established in the same Act that created KRS 189A.105(3)'s right to counsel could not render a DUI suspect's submission to testing involuntary because, "as consent is implied by law, one cannot claim coercion in consenting to a test."[7] Accordingly, the implicit premise upon which the majority opinion's supposed "better argument" rests, *i.e.*, that a separate "voluntariness" inquiry is appropriate when a DUI defendant raises questions regarding the process leading up to his or her decision to roll up his or her sleeve, is a myth that was debunked in *Hernandez–Gonzalez*. And, the assertion that a police officer's conduct can somehow negate a DUI suspect's decision to submit to testing simply misses the point of implied consent. In my view, therefore, today's majority opinion does the Bench and Bar a disser-

---

1. *Cook v. Commonwealth*, Ky., 129 S.W.3d 351, 359 (2004).

2. *Id.* at 358.

3. Ky., 72 S.W.3d 914 (2002).

4. KRS 189A.103(1).

5. *Id.*

6. *Hernandez–Gonzalez*, 72 S.W.3d at 915.

7. *Id.* at 916.

not counted noses), the word "conviction" is not limited to a final judgment. *Commonwealth v. Reynolds,* Ky., 365 S.W.2d 853, 854 (1963) (holding that for purposes of impeachment by evidence of conviction of a felony under CR 43.07, it is immaterial that no sentence was ever pronounced). *See also Thomas v. Commonwealth,* Ky., 95 S.W.3d 828, 829 (2003) (defendant was a convicted felon for purposes of KRS 527.040 where he had been convicted but not yet sentenced for prior offense). Of course, it is also well settled that the Commonwealth cannot introduce evidence of charges that have been dismissed or set aside. *Robinson v. Commonwealth,* Ky., 926 S.W.2d 853, 854 (1996); *Scrivener v. Commonwealth,* Ky., 539 S.W.2d 291, 293 (1976); *Dial v. Commonwealth,* 142 Ky. 32, 133 S.W. 976, 977 (1911) ("When, therefore, the judgment of conviction has been set aside by the court rendering it, when it had jurisdiction to do so, the verdict stands as if judgment had not been rendered.").

 The trial judge held that Judge Johnson did not have jurisdiction to dismiss the indictment in 1974 because the trial court lost jurisdiction over the convictions ten days after entry of Judge Jones's order of February 3, 1972. We disagree. The ten day period within which to file a motion to alter, amend or vacate runs from the date of the entry of the final judgment. CR 59.05; *Commonwealth v. Gross,* Ky., 936 S.W.2d 85, 87 (1996); *Silverburg v. Commonwealth,* Ky., 587 S.W.2d 241, 244 (1979). Criminal Rule 11.04(1) provides now, as it did in 1972, that "[a] judgment of conviction shall set forth the plea, the verdict or findings, the adjudication *and sentence* . . . . "(Emphasis added.) Until a final judgment was entered, the Whitley Circuit Court retained jurisdiction to alter, amend or vacate Appellant's convictions. Thus, Judge Johnson had jurisdiction to

effectively vacate the convictions by entering the 1974 order sustaining the Commonwealth's motion to dismiss the indictment.

 Even if Appellant's 1972 convictions had not been previously vacated, they still would have been inadmissible at Appellant's trial of his 2001 offense. Since the 1972 convictions were never finalized by entry of a judgment, the time for appealing the convictions had not expired.

It is the holding of this court that a prior conviction may not be utilized under KRS 532.055 . . . unless:

(1) The time for appealing the conviction has expired without appeal having been taken, or

(2) Matter of right appeal has been taken pursuant to § 115 of the Constitution of Kentucky and the judgment of conviction has been affirmed.

*Melson v. Commonwealth,* Ky., 772 S.W.2d 631, 633 (1989).

The Commonwealth asserts that the error was waived when defense counsel agreed to stipulate to the prior offenses in lieu of an introduction of official documents pertaining to the 1971 indictment. We disagree. Appellant preserved his objection by a motion in limine that was overruled by a verbal order of the trial court during the course of the trial. KRE 103(d). Defense counsel never withdrew the objection but only agreed to the stipulation as a method of presenting the evidence to the jury.

Accordingly, Appellant's conviction of murder is affirmed; however, the sentence imposed for that conviction is vacated and this case is remanded to the Whitley Circuit Court for a new sentencing phase of the trial in accordance with the contents of this opinion.

vice with its *obiter dictum* that ignores this Court's prior precedent and invites litigants to argue a theory that this Court has already rejected.

Graves, J., joins this concurring opinion.