**Melvin P. LITTERAL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2007–CA–001982–DG.**

Court of Appeals of Kentucky.

Dec. 5, 2008.

Discretionary Review Denied by Supreme Court April 15, 2009.

Ordered to be Published
April 15, 2009.

John E. Cornett, Georgetown, KY, Brandi Lewis, Lexington, KY, for appellant.

Melissa Moore Murphy, Assistant County Attorney, Lexington, KY, for appellee.

Before ACREE, CLAYTON, and KELLER, Judges.

## OPINION

ACREE, Judge.

Melvin Litteral, who entered a conditional guilty plea to the charge of driving under the influence of alcohol, appeals from an order of the Fayette Circuit Court affirming the district court's denial of a motion to suppress his breathalyzer test results. Litteral contends that the test results should have been thrown out because the test was administered after he was denied the right of private consultation with his attorney as authorized by Kentucky Revised Statute (KRS) 189A.105(3) and Kentucky Rules of Criminal procedure (RCr) 2.14. We disagree.

■ Our review of a suppression ruling requires a two-step determination.... The factual findings by the trial court are reviewed under a clearly erroneous standard, and the application of the law to those facts is conducted under *de novo* review.

*Cummings v. Commonwealth,* 226 S.W.3d 62, 65 (Ky.2007), citing *Welch v. Commonwealth,* 149 S.W.3d 407 (Ky.2004). The decision below did not, and our review does not, require a resolution of the few factual disparities in the parties' statements of the facts. Kentucky law, even as applied to Litteral's version of the facts, requires that we affirm the Fayette Circuit Court.

Officer Clay Combs of the Lexington Metro Police Department arrested Litteral on suspicion of DUI and transported him to the Fayette County Detention Center where his blood alcohol content was to be tested. In accordance with KRS 189A.105,

Officer Combs described the consequences of refusing testing and of Litteral's right to attempt contact with an attorney before the test was administered. Litteral contacted his sister who is a licensed attorney practicing in Georgetown, Kentucky. Officer Combs remained in close proximity to Litteral while he was attempting to communicate with his attorney.

By statute, the privilege of driving a vehicle in Kentucky carries with it the implied consent of every driver to testing for alcohol concentration which may impair driving ability. KRS 189A.103(1). Another statute requires that a driver suspected of DUI must be informed of the negative implications of refusing to submit to such testing. KRS 189A.105(2)(a). Additionally, the same statute requires that such a driver be informed of the right to be "afforded an opportunity of at least ten (10) minutes but not more than fifteen (15) minutes to attempt to contact and communicate with an attorney[.]" KRS 189A.105(3). Litteral argues that he was denied this right and that such denial requires suppression of the breathalyzer test subsequently administered. We believe Litteral is arguing for a greater right to counsel than the Legislature intended to allow.

The implied consent law was originally enacted by our Legislature in 1968 as KRS 186.565. *Washburn v. Commonwealth,* 433 S.W.2d 859, 861 (Ky.1968). Our former Court of Appeals soon after held that "the taking of blood and breath samples for analysis were not critical stages of a prosecution and the denial of the right to have counsel present at such procedures did not constitute a violation of the Sixth Amendment of the Constitution of the United States." *Newman v. Hacker,* 530 S.W.2d 376, 377 (Ky.1975)(no right to have counsel present at the time a breathalyzer test is administered.). A few years later,

when a law enforcement officer refused to allow a driver suspected of DUI even to telephone his attorney, this Court held that no right of the suspect was affected. *Elkin v. Com., Dept. of Transp., Bureau of Vehicle Regulation,* 646 S.W.2d 45 (Ky. App.1982). Building upon *Newman,* we said there was no right even "to consult counsel prior to deciding whether to submit to the requested breathalyzer test[,]" finding "no real distinction between the" facts in *Newman* and those then before the Court. *Elkin* at 46–47; *see also, Com. Transp. Cabinet Dept. of Vehicle Regulation v. Cornell,* 796 S.W.2d 591, 594 (Ky. App.1990)(in *Elkin,* "[t]his Court ruled that there is no distinction between the right to consult an attorney before submitting to a test and the right to have an attorney present during the test.").

In 1991, KRS 186.565 was repealed and replaced by portions of KRS 189A.103. The consequences of refusing to submit to testing were addressed in KRS 189A.105(2). In 2000, the Legislature added a very limited right to attempt contact with an attorney. It is that provision that is at issue before us. In pertinent part, the provision reads as follows:

> During the period immediately preceding the administration of any test, ***the person shall be afforded an opportunity*** of at least ten (10) minutes but not more than fifteen (15) minutes ***to attempt to contact and communicate with an attorney*** and shall be informed of this right. ***Inability to communicate with an attorney during this period shall not be deemed to relieve the person of his obligation to submit to the tests*** and the penalties specified by KRS 189A.010 and 189A.107 shall remain applicable to the person upon refusal. ***Nothing in this section shall be deemed to create a right to have an attorney present during the administration of the tests,*** but the person's

attorney may be present if the attorney can physically appear at the location where the test is to be administered within the time period established in this section.

KRS 189A.105(3)(emphasis supplied).

█ Litteral's only complaint is that he was unable to consult privately with his attorney. However, we believe the highlighted language was purposefully crafted. The "right" described is very circumscribed. It is merely the right to "an opportunity . . . to attempt to contact and communicate with an attorney[.]" *Id.* The statute specifically avoids creating a right to have counsel present. This is far short of the right to private consultation with an attorney. If such private consultation was intended, the Legislature could easily have granted that right.

We believe the Legislature was mindful of the requirement, which it previously incorporated into the legislation, that breathalyzer testing be permitted "only after a peace officer has had the person under personal observation at the location of the test for a minimum of twenty (20) minutes." KRS 189A.103(3)(a). The purpose of this observation period is to assure that the test "subject shall not have oral or nasal intake of substances which will affect the test." 500 Kentucky Administrative Regulations KAR 8:030 Section 1(1). Considering that our Courts previously held the test subject was entitled to no contact with legal counsel, we believe the Legislature intended only to allow such right as would not infringe upon the Commonwealth's need to obtain accurate evidence regarding a violation of KRS 189A.010.

The circuit court was correct to quote the admonition contained in a Kentucky treatise on DUI law that

> [t]here can be little question that the defendant is not entitled to privacy as

the conversation with the attorney is taking place during the 20–minute observation period.... The defense counsel will have to be artful in eliciting "yes" or "no" answers to specific areas in advising the defendant.

■ Billingsley and Zevely, *Kentucky Handbook Series, Driving Under the Influence Law,* § 12:11. We are convinced that the purpose of this very circumscribed right of access to counsel was to allow independent confirmation of the information conveyed by the law enforcement officer—and then only in a way that does not impact the accuracy of the test itself.

It is significant that Litteral's motion sought only to suppress the results of the breathalyzer test. The Commonwealth did not attempt to offer into evidence anything Litteral said during his conversation with his attorney. Consequently, there is no need to comment upon the admissibility of such evidence. However, with regard to suppressing the test results obtained after the subject was denied access to private consultation with an attorney, the Supreme Court has shed considerable light.

In *Cook v. Commonwealth,* 129 S.W.3d 351 (Ky.2004), the arresting officer "seriously misconstrued the meaning of the implied consent statute" and told a DUI suspect "if you take the test you get a lawyer and if you don't take the test you don't get a lawyer." *Id.* at 358. The Supreme Court had no trouble agreeing with Cook that the officer was clearly wrong, stating: "The statute clearly provides that a person has a right to at least attempt to contact an attorney *before* the administration of the test." *Id.* (emphasis in original). This mistake, argued Cook, justified suppressing the test results. The Court disagreed, noting that Cook "did not consent to the taking of his blood sample. Rather, the sample was obtained involuntarily pursuant to a search warrant." *Id.* Consequent-

ly, the Supreme Court affirmed the denial of Cook's suppression motion.

Then, however, the Court stated in *dicta* that Cook would have "a *better argument* if he had actually consented to the blood tests and was claiming that the violation of the statute negated his consent." *Id.* (emphasis supplied). Though Litteral is now presenting this so-called "better argument," we do not believe it prevails. Instead, we agree with Justice Keller's view that, in fact, no such "better argument" exists. Justice Keller's view, expressed in his concurring opinion in *Cook,* is worthy of extended quotation:

> I emphatically disagree with the majority's suggestion that Appellant's claim for suppression of the blood test results "would be a better argument if he had actually consented to the blood tests and was claiming that the violation of the statute negated his consent." [footnote omitted] Of course, the majority's commentary regarding a hypothetical factual situation wholly distinct from the one actually presented in the case at bar is nothing more than *obiter dictum.* My primary concern, however, is that the *obiter dictum* in question is also inaccurate. This theoretical "better argument" for suppression of alcohol concentration results—which, as I understand it, would be premised upon a claim that the suspect's decision to submit to testing was involuntary because of a denial of KRS 189A.105(3)'s statutory right to counsel—would be no "better" than, and, in fact, would be just as deficient as, Appellant's own argument.

> Just two years ago, in *Commonwealth v. Hernandez–Gonzalez,* [72 S.W.3d 914 (Ky.2002)] this Court shut the door on this allegedly "better argument" when we recognized that a DUI suspect has already impliedly consented to "one (1) or more tests of his blood, breath, and

urine, or combination thereof" [KRS 189A.103(1)] simply by operating a vehicle within Kentucky "if an officer has reasonable grounds to believe that a violation of KRS 189A.010(1) or 189.520(1) has occurred." [*Id.*] This Court observed in *Hernandez–Gonzalez* that "[t]he 2000 amendment of [KRS 189A.103(1)] to read 'has given his consent' makes it unmistakable that a suspected drunk driver must submit to a test to determine blood alcohol concentration." [*Hernandez–Gonzalez* at 915] We thus held that inaccuracies in the "pre-testing warnings" established in the same Act that created KRS 189A.105(3)'s right to counsel could not render a DUI suspect's submission to testing involuntary because, "as consent is implied by law, one cannot claim coercion in consenting to a test." [*Id.* at 916] Accordingly, the implicit premise upon which the majority opinion's supposed "better argument" rests, *i.e.*, that a separate "voluntariness" inquiry is appropriate when a DUI defendant raises questions regarding the process leading up to his or her decision to roll up his or her sleeve, is a myth that was debunked in *Hernandez–Gonzalez.* And, the assertion that a police officer's conduct can somehow negate a DUI suspect's decision to submit to testing simply misses the point of implied consent. In my view, therefore, today's majority opinion does the Bench and Bar a disservice with its *obiter dictum* that ignores this Court's prior precedent and invites litigants to argue a theory that this Court has already rejected.

*Cook*, 129 S.W.3d at 366–67 (Keller, J., concurring). Litteral has accepted this errant invitation; however, we reject the argument.

Additionally, we note that even the majority opinion in *Cook* undermines this "better argument" by citing *Beach v. Com-* *monwealth*, 927 S.W.2d 826 (Ky.1996). *Cook* at 358. In *Beach*, the Supreme Court said

> Exclusion of evidence for violating the provisions of the informed consent statute is not required. It has been held in Kentucky and elsewhere that in the absence of an explicit statutory directive, evidence should not be excluded for the violation of provisions of a statute where no constitutional right is involved. *See Little v. Commonwealth*, Ky., 438 S.W.2d 527 (1968).... [T]he overall purpose of the legislation was to facilitate obtaining evidence of driving while under the influence. KRS 446.080(1) provides that all statutes of this state shall be liberally construed with a view to promote their objects and to carry out the intent of the legislature.... [T]he statute contains no explicit or implicit directive from the General Assembly that requires exclusion of evidence obtained. The United States Supreme Court has held that a blood test does not violate the Federal Due Process Clause, the Fifth Amendment against self-incrimination, the Sixth Amendment right to counsel or the Fourth Amendment right to unlawful search and seizure. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

> Exclusion of evidence for violating the provisions of the implied consent statute is not mandated absent an explicit statutory directive.

*Beach* at 828.

Finally, we note that the statute provides substantial limitation on the opportunity to contact and communicate with an attorney.

> Inability to communicate with an attorney during this period shall not be deemed to relieve the person of his obligation to submit to the tests[.]

KRS 189A.105(3). We interpret "[i]nability to communicate" to include the inability of the DUI suspect and his counsel to successfully employ communications techniques such as described in the DUI handbook. *See* Billingsley and Zevely, *supra.*

Litteral refers us to decisions from sister states in which courts found a driver suspected of driving under the influence to be entitled to consult privately with an attorney prior to the administration of a blood alcohol test. We believe these cases are distinguishable. Some interpret implied consent laws that still use the phrase "is deemed to have consented," or similar language, replaced by our Legislature in 2000 with more definitive "has given his consent" language—a development deemed significant in Justice Keller's concurrence in *Cook. See Brosan v. Cochran,* 307 Md. 662, 516 A.2d 970 (1986)(interpreting Maryland Code, Transportation, § 16–205.1(a)(2)); *State v. Durbin,* 335 Or. 183, 63 P.3d 576 (2003)(interpreting Oregon Revised Statutes § 813.100(1)); *Farrell v. Anchorage,* 682 P.2d 1128 (Alaska Ct.App.1984)(interpreting Alaska Statutes § 12.25.150(b)); *see also* Alaska Statues § 28.33.031 (by which defendant "is considered to have given consent" to testing).

Additionally, in *State v. Durbin,* the Oregon court was interpreting a right to counsel under Oregon's constitution, not a right to attempt contact with counsel as circumscribed as that granted by KRS 189A.105(3). As noted above, since 1975 our highest court has held there was no constitutional basis for such a right at this stage of the proceedings. *Newman, supra.*

In the final case cited by Litteral, *State v. Holland,* 147 Ariz. 453, 711 P.2d 592 (1985), there was no justifiable reason for the officer to be present while the subject consulted his counsel. The Arizona court held that Holland had a right to confiden-

tial consultation with his counsel because "it did not impair the investigation or the accuracy of a subsequent breath test." *Id.* at 595. In the case before us, Officer Combs' presence was mandated by KRS 189A.103(3)(a) to assure the accuracy of the test.

For all of the foregoing reasons, the order of the Fayette Circuit Court is affirmed.

ALL CONCUR.