**COMMONWEALTH of Kentucky,
Appellant**

**v.**

**James BEDWAY, Appellee**

**2012–SC–000771–DG**

Supreme Court of Kentucky.

RENDERED: AUGUST 20, 2015

Counsel for Appellant: Jack Conway, Attorney General of Kentucky, Capitol Building, Suite 118, Frankfort, KY 40601, David A. Sexton, Special Assistant Attorney General, Assistant Jefferson County Attorney, 531 Court Place, Suite 900, Louisville, KY 40202, Michael J. O'Connell, Assistant Jefferson County Attorney, Fiscal Court Building, 531 Court Place, Suite 900, Louisville, KY 40202.

Counsel for Appellee: Paul S. Gold, Republic Plaza, Suite 320, 200 South Seventh Street, Louisville, KY 40202, Paul J. Neel, Jr., 1012 South Fourth Street, Louisville, KY 40203.

## OPINION OF THE COURT BY JUSTICE KELLER

The Commonwealth of Kentucky appeals from an opinion by the Court of Appeals, which affirmed the Jefferson Circuit Court's holding that James Bedway's (Bedway) statutory right "to attempt to contact and communicate with an attorney" under Kentucky Revised Statute (KRS) 189A.105(3) was violated subsequent to his arrest for driving under the influence of alcohol (DUI). The circuit court also held that such a violation mandated the suppression of Bedway's breathalyzer test. While we hold the Commonwealth did violate Bedway's statutory right, because of Kentucky's implied consent law under KRS 189A.103 and the potential penalties attendant thereto, the remedy in this case is not suppression. Therefore, we reverse and remand.

## I. BACKGROUND.

On December 7, 2010, a bench trial was held in Jefferson District Court to determine whether Bedway had been driving under the influence in violation of KRS 189A.010. Jefferson County Deputy Sheriff Sean Hayden (Deputy Hayden) testified that at approximately 5:00 a.m. on March 15, 2009, he observed the vehicle being driven by Bedway had expired tags and was weaving and moving erratically on I–64 in Louisville, Kentucky. Deputy Hayden also saw Bedway nearly strike a concrete barrier while exiting I–64 onto westbound I–264. When Deputy Hayden approached the vehicle, he noticed Bedway smelled of alcohol and his speech was slurred. Deputy Hayden then administered three field sobriety tests, which Bedway failed. Deputy Hayden thereafter placed Bedway under arrest for operating a motor vehicle under the influence of alcohol and transported Bedway to the Metro Corrections Facility for a court admissible breathalyzer test.

At the Metro Corrections Facility, Officer Samuel Broome advised Bedway that he had ten to fifteen minutes to attempt to contact an attorney before submitting to a breathalyzer test, as required by KRS 189A.105(3). Once that time period ended, Bedway submitted to the breathalyzer test, registering a 0.161 blood-alcohol content, more than twice the legal limit.

At trial, Bedway and Officer Broome gave conflicting testimony regarding what occurred during the aforementioned ten to fifteen minute time period. Bedway testified that he asked if he could call his daughter to get the name of an attorney (Mr. Gold) from her. According to Bedway, Officer Broome denied his request

and referred him to a group of phones and phonebooks, where some attorneys' phone numbers were written on the wall. Bedway admitted that he did not attempt to contact an attorney.

Officer Broome testified that he could not remember Bedway's request to call his daughter, but his written report indicated that Bedway submitted to the breathalyzer test without attempting to contact an attorney. Officer Broome also testified that he would have refused any request by Bedway to contact his daughter because a defendant "is to contact an attorney, and that's it."

During trial, Bedway moved to suppress the results of the breathalyzer test. In support of his motion, Bedway argued that Officer Broome's refusal to let him contact his daughter deprived him of his statutory right to attempt to contact counsel. The Commonwealth argued that Officer Broome provided Bedway with access to a telephone and phonebooks and showed Bedway a list of attorneys' phone numbers written on the wall. According to the Commonwealth, that was sufficient to fulfill its statutory duty.

The district court denied Bedway's motion to suppress, noting that, even if Officer Broome had refused to let Bedway contact his daughter, Officer Broome's actions were not in violation of KRS 189A. 105(3). Bedway then entered a conditional guilty plea and appealed to the circuit court. The circuit court reversed the district court, finding that Officer Broome had violated Bedway's statutory right to attempt to contact an attorney and that evidence of the breathalyzer test results should have been suppressed.

The Court of Appeals affirmed the circuit court, holding that Bedway's request was neither unreasonable nor beyond the scope of KRS 189A.105(3), and the only remedy for this statutory violation was to suppress evidence obtained thereafter as fruit of the poisonous tree. The Court of Appeals and circuit court decisions are discussed in more detail below.

## II. STANDARD OF REVIEW.

■ The standard of review of a lower court's motion to suppress requires a two-step assessment. "The factual findings by the trial court are reviewed under a clearly erroneous standard, and the application of the law to those facts is conducted under *de novo* review." *Cummings v. Commonwealth*, 226 S.W.3d 62, 65 (Ky. 2007).

## III. ANALYSIS.

There are essentially two issues on appeal. The first is whether the police violated Bedway's statutory right to attempt to contact an attorney. The second is, if the police violated that right, whether Bedway's breathalyzer test results should have been suppressed. We address these issues in that order.

### A. Right to Attempt to Contact an Attorney.

■ KRS 189A.105(3) provides as follows:

During the period immediately preceding the administration of any test, the person shall be afforded an opportunity of at least ten (10) minutes but not more than fifteen (15) minutes to attempt to contact and communicate with an attorney and shall be informed of this right. Inability to communicate with an attorney during this period shall not be deemed to relieve the person of his obligation to submit to the tests and the penalties specified by KRS 189A.010 and 189A.107 shall remain applicable to the person upon refusal. Nothing in this section shall be deemed to create a right to have an attorney present during the

administration of the tests, but the person's attorney may be present if the attorney can physically appear at the location where the test is to be administered within the time period established in this section.

This Court has not weighed in on what accommodations, if any, the police must make in order to enable a person to exercise his right to attempt to contact an attorney. However, the Court of Appeals has addressed this issue in three cases, the most recent of which arguably is at odds with the earlier two cases.

In *Litteral v. Commonwealth*, 282 S.W.3d 331, 333 (Ky. App. 2008) the Court of Appeals held that "the 'right' described is very circumscribed. It is merely the right to 'an opportunity . . . to attempt to contact and communicate with an attorney. . . .' [T]he Legislature intended only to allow such [a] right as would not infringe upon the Commonwealth's need to obtain accurate evidence regarding a violation of KRS 189A.010." *Id.* at 333. Applying its interpretation of the statute, the Court of Appeals held that refusing to permit a defendant to consult with an attorney in private did not interfere with the defendant's statutory rights. Subsequently, in *Bhattacharya v. Commonwealth*, 292 S.W.3d 901, 904 (Ky. App. 2009), the Court held that an officer's insistence on dialing the phone for the defendant and listening to see if anyone answered did not interfere with the defendant's statutory rights.

More recently, in *Ferguson v. Commonwealth*, 362 S.W.3d 341 (Ky. App. 2011), the Court of Appeals held the police denied the accused her statutory right to contact an attorney by refusing to allow her access to her cell phone. Because of its similarities to this case, we summarize *Ferguson* in detail below.

When Ferguson was arrested on suspicion of drunk driving, police confiscated her purse, which held her cell phone. She was informed of her KRS 189A.105(3) right to attempt to contact an attorney within the ten to fifteen minute window preceding the breathalyzer test. Ferguson informed police she had an attorney's phone number stored in her cell phone, and requested access to it. Police denied her request and allowed Ferguson access to a collect-call only telephone on the wall of the jail. Ferguson then submitted to the breathalyzer test which showed a 0.092 blood alcohol content. The court held that Ferguson's inability to contact and communicate with an attorney did not relieve her of the obligation to undergo the test; however, "it is just as certain that [KRS 189A.105(3)] granted Ferguson the right to communicate with an attorney, and by virtue of state action Ferguson's right to attempt to contact her attorney was frustrated." *Id.*

The Court of Appeals held this amounted to a violation under KRS 189A.105(3) and warranted suppression, stating that:

> Ferguson knew which attorney she wished to contact and had the phone number in her cell phone. In today's technologically advanced society, many people store important contact information in their cell phones. It is not unreasonable to require some minimal police assistance, such as here, by providing reasonable access to a cell phone in the immediate area for the limited purpose of procuring an attorney's phone number or contacting said attorney in order to exercise one's right as provided by KRS 189A.105(3). In *Bhattacharya*, we found that where a detainee was interested in contacting an attorney, a phone book was sufficient for locating a number. In contrast, the detainee in the matter *sub judice* had the phone number of her attorney stored in her cell phone and advised the officer

that her attorney only received phone calls on a cell phone. Certainly in today's society, ubiquitous use of cell phones makes the request to retrieve a phone number from a cell phone a reasonable request, and limiting an individual to a phone that makes collect-only phone calls places an impermissible limitation on the right to attempt to contact an attorney. Few attorneys are in their offices twenty-four hours a day, thus a call to an attorney's cell phone is reasonable. Also, expecting an attorney to accept a collect call, in such a situation, from a jailhouse phone is not reasonable. We are not saying that the officer need go beyond what is reasonably accessible in the immediate area to permit an individual to attempt to contact an attorney. In order to exercise the right contained in KRS 189A.105(3), Ferguson required access to her attorney's phone number contained on her cell phone and should have been given the opportunity to retrieve the number and provided a telephone to contact said attorney. Thus, Ferguson's right contained in KRS 189A.105(3) was violated when, based on the totality of the circumstances, she was not provided with the means capable of contacting her attorney. (Citation and footnotes omitted.)

*Ferguson,* 362 S.W.3d at 343–46.

Based on these Court of Appeals opinions, the circuit court herein held that:

[L]aw enforcement must make a reasonable effort to accommodate a suspect in his attempt to contact an attorney, which can include permitting him to obtain contact information through a third party. Therefore, under the totality of the circumstances, a trial court must determine whether this right is reasonably facilitated. Factors to include, but

are not limited to, the following: (1) time of day; (2) whether the suspect is attempting to obtain the number(s) of a specific attorney whom he knows personally, or knows by reputation; (3) whether the suspect affirmatively states that a third party has an attorney phone number not available in the Phonebook (i.e. home or cell number); and (4) whether the request is timely. According to *Litteral*[1], *supra,* and *Bhattacharya*[2], *supra,* the underlying concern of KRS 189A. 105 is obtaining accurate test results. So long as this task moves forward without delay, the Court sees no legitimate reason why a suspect cannot utilize the time afforded under subsection (3) to act in reasonable furtherance of attempting to contact, and communicate with, an attorney.

· · ·

When applying this test to the facts of the immediate case, it is clear that Mr. Bedway was not allowed to reasonably effectuate his right to attempt to contact an attorney. The time of his observation period was approximately 5:45 a.m., which is a difficult time to contact an attorney at an office. With respect to the second factor, Mr. Bedway testified that he knew Mr. Gold's work because he previously represented his daughter. As such, although there was no established attorney-client relationship, Mr. Bedway's desire to call his daughter to obtain Mr. Gold's numbers was not as random as opening a phonebook and dialing any attorney's number, a practice the Commonwealth apparently *would* allow. Under the third factor, Mr. Bedway testified that his daughter had Mr. Gold's home and cell phone numbers. With respect to timeliness,

---

**1.** *Litteral,* 282 S.W.3d at 333.

**2.** *Bhattacharya,* 292 S.W.3d at 904.

the record indicates that Mr. Bedway made his request with sufficient time to make the calls and secure at least some minimal amount of counseling.

The Commonwealth argued to the Court of Appeals that the circuit court had impermissibly expanded the scope of KRS 189A. 105(3) and failed to follow precedent under *Litteral*, 282 S.W.3d at 333. However, the Court of Appeals agreed with the circuit court regarding the accommodations the police must make to ensure that a defendant's statutory rights are not violated.

The Court of Appeals held that no significant distinctions existed between Ferguson and Bedway, noting the similarities in Bedway's and Ferguson's requests. Like Ferguson, Bedway sought to call a specific attorney at a time when it would be unlikely that an attorney would be in his or her law office. The Court of Appeals could not conceive how the Commonwealth would have been negatively affected by accommodating Bedway's timely request to consult with counsel for the minimal period of time provided in the statute. The Court held that the Legislature did not intend to so drastically limit a suspect's right to contact an attorney to randomly locating a number in the phone book and calling collect in the late night hours. As the Court noted, taking the Commonwealth's argument to its logical conclusion would mean that the Commonwealth could satisfy the statutory requirement if it permitted a defendant to attempt to contact an attorney by "sitting in a jail cell and yelling for an attorney, hoping one would hear and come to his attention." *Commonwealth v. Bedway*, 2011–CA–001235–DG, 2012 WL 5274732 (Ky. App. Oct. 26, 2012).

The Court attempted to construe the statute to effectuate the plain meaning and unambiguous intent expressed in the law and affirmed the circuit court's finding that the police had violated Bedway's statutory right to attempt to contact an attorney.

We agree with the Court of Appeals' analysis of KRS 189A. 105(3) as set forth in *Ferguson* and in its opinion herein that the police must make reasonable accommodations. We next examine what accommodations the Commonwealth must make.

## B. The Commonwealth Must Make Reasonable Accommodations.

KRS 189A. 105(3), as mentioned in full above, states:

> [T]he person shall be afforded an opportunity of at least ten (10) minutes but not more than fifteen (15) minutes to *attempt* to contact and communicate with an attorney ... Inability to communicate with an attorney during this period shall not be deemed to relieve the person of his obligation to submit to the tests ... Nothing in this section shall be deemed to create a right to have an attorney present during the administration of the tests, but the person's attorney may be present if the attorney can physically appear at the location where the test is to be administered within the time period established in this section.

(Emphasis Added). The right conferred by this statute is broader than simply providing a defendant access to a phone book or phone numbers written on the wall. The Commonwealth and the arresting officers must make reasonable accommodations in allowing an accused his or her right to attempt to contact an attorney.

In determining the reasonableness of such accommodations, the trial court should look to the following non-exclusive list of factors: (1) time of day; (2) whether the suspect is attempting to obtain the number(s) of a specific attorney whom he

knows personally, or knows by reputation; (3) whether the suspect affirmatively states that a third party has an attorney phone number not available in the phonebook (i.e. home or cell number); and (4) whether the request is timely.[3]

As the circuit court and the Court of Appeals held, Bedway's request was reasonable and should have been accommodated. However, that does not end our analysis. We must now determine if suppression of the breathalyzer test results is the appropriate "penalty" for having failed to accommodate Bedway's reasonable request. In resolving this issue we must examine a defendant's statutorily implied consent to submit to testing and balance that against a defendant's right to attempt to contact an attorney.

## C. Implied Consent.

The Commonwealth has a statutory right to test a defendant's breath as set forth in KRS 189A.103, the "implied consent" statute, which states:

> The following provisions shall apply to any person who operates or is in physical control of a motor vehicle or a vehicle that is not a motor vehicle in this Commonwealth . . . He or she has given his or her consent to one (1) or more tests of his or her blood, breath, and urine, or combination thereof, for the purpose of determining alcohol concentration or presence of a substance which may impair one's driving ability, if an officer has reasonable grounds to believe that a violation of KRS 189A.010(1) or [KRS] 189.520(1) has occurred.

KRS 189A.103 is based on the public policy that a person driving within Kentucky has given implied consent to the performance of breath, blood, and/or urine tests in the event that the individual is suspected of driving a vehicle under the influence. *Commonwealth v. Minix,* 3 S.W.3d 721, 723 (Ky. 1999). To further that public policy, the legislature has imposed penalties for refusing to submit to testing. Those penalties range from mandatory driver's license revocation to an increased sentence if convicted. *See* KRS 189A.105. Because drivers of vehicles within the Commonwealth have consented to testing, albeit by implication, we examine the exclusionary rule accordingly.

## D. Exclusionary Rule and Suppression of Evidence.

In addressing whether to exclude the evidence of Bedway's breathalyzer test, the circuit court stated that:

> [U]nder the Commonwealth's analysis it really does not matter whether law enforcement officers follow the mandates of the statute because there is no remedy. . . . With respect to access to legal counsel during testing, the Legislature bestowed the right to at least attempt to seek the advice of counsel, however brief it may be. This counseling could touch a suspect's right to refuse testing . . . which is similar in effect to the right against self-incrimination. The right against self-incrimination has been held to be nearly sacrosanct, and, although not required by the Constitution, law

---

**3.** See *Lee v. Commonwealth,* 313 S.W.3d 555, 556 (Ky. 2010) (holding a totality of the circumstances analysis was proper to determine whether an officer made a reasonable effort to accommodate an arrested individual's request for independent testing analyzed under five factors: (1) availability of or access to funds or resources to pay for the requested

test; (2) a protracted delay in the giving of the test if the officer complies with the accused's requests; (3) availability of police time and other resources; (4) location of requested facilities; and (5) opportunity and ability of accused to make arrangements personally for the testing).

enforcement officers must recite certain rights upon arresting suspects or risk suppression of incriminating statements.... [T]he right to attempt to contact an attorney is not a hollow right because it can have a substantial impact on the prosecution of drivers arrested for DUI. As with *Long*, ignoring the mandates of the informed consent statute without fear of suppression would render the statute meaningless and incentivize law enforcement practices that do not conform to the Legislature's mandate.

Based in large part on its holding in *Ferguson*, the Court of Appeals agreed with the circuit court's conclusion that exclusion of Bedway's breathalyzer test results was necessary. We disagree with the circuit court and the Court of Appeals.

RCr 9.78 states that:

If at any time before trial a defendant moves to suppress, or during trial makes timely objection to the admission of evidence consisting of (a) a confession or other incriminating statements alleged to have been made by the defendant to police authorities, (b) the fruits of a search, or (c) witness identification, the trial court shall conduct an evidentiary hearing outside the presence of the jury and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the motion or objection and necessary to support the ruling. If supported by substantial evidence the factual findings of the trial court shall be conclusive.

The result of a successful motion to suppress is the exclusion from admission at trial of any wrongfully acquired evidence. *Wilson v. Commonwealth*, 37 S.W.3d 745, 748 (Ky. 2001) *citing Weeks v. United States*, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914) (overruled in part on other grounds by *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) and in part on other grounds by *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). The purpose of the exclusionary rule has historically been twofold: (1) to deter police misconduct by excluding evidence obtained in violation of the Fourth Amendment to the U.S. Constitution; and (2) to encourage compliance with the constitutional protection against unreasonable searches and seizures. *Hensley v. Commonwealth*, 248 S.W.3d 572 (Ky. App. 2007) *citing United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

Exclusion extends to the direct and indirect products of official misconduct. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Therefore, evidence obtained in violation of these constitutionally protected rights cannot be admitted against an accused if the evidence is derivative of the original illegality, i.e., is "tainted" or is the proverbial "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

However, exclusion of evidence pursuant to the rule usually applies only to searches that were carried out in violation of an individual's constitutional rights. *Copley v. Commonwealth*, 361 S.W.3d 902, 905 (Ky. 2012). The Commonwealth argues that the Court of Appeals improperly applied the exclusionary rule because no Constitutional right is invoked in KRS 189A.105. Bedway argues that test results taken in violation of a defendant's statutory right to attempt to contact an attorney must be suppressed because there is no other reasonable way to deter police misconduct. Both arguments have some merit. However, in this case, we agree with the Commonwealth that suppression of Bedway's breathalyzer test re-

sults was inappropriate for the following reasons.

First, pursuant to KRS 189A.103, when Bedway chose to drive on the roads of the Commonwealth he consented to "one (1) or more tests of his ... blood, breath, and urine, or [a] combination thereof, for the purpose of determining alcohol concentration or [the] presence of a substance which may [have] impair[ed] [his] driving ability." Therefore, even if a Constitutional right to attempt to contact counsel existed, Bedway waived that right by operating a motor vehicle in the Commonwealth. *Id.*

Second, KRS 189A.105(3) provides that the inability to contact an attorney does not relieve a person of the obligation to submit to testing. Thus, Bedway was obligated to submit to testing, or suffer the consequences, whether he contacted an attorney or not.

Third, as we noted in *Beach v. Commonwealth,* "[e]xclusion of evidence for violating the provisions of the implied consent statute is not mandated absent an explicit statutory directive." 927 S.W.2d 826, 828 (Ky.1996). There is no statutory directive to that effect.

Fourth, Bedway did submit to the mandatory testing. Thus, he did not suffer the automatic, and in his case significantly more egregious, consequences that follow refusal to submit. Had Bedway refused to submit to testing after the police refused to reasonably accommodate his request to contact his daughter, the result might have been different.

 Finally, in *Copley* we held that:

[W]hen a criminal procedur[al] rule is violated but the defendant's constitutional rights are not affected, suppression may still be warranted if there is (1) prejudice to the defendant, in the sense that the search might not have occurred or been so abusive if the rule had been followed or (2) if there is evidence of deliberate disregard of the rule.

361 S.W.3d at 907 (footnote omitted). We now extend this rule to a violation of the statutory mandate in KRS 189A.105. Thus, if the police deliberately disregard the mandate to permit a defendant to attempt to contact an attorney or the defendant is prejudiced as a result of that deliberate disregard, *i.e.* the defendant might have refused the testing and thereby received a lesser sentence, evidence seized thereafter may be suppressed.

Applying the *Copley* standard to this case, the circuit court erred when it suppressed the results of Bedway's breathalyzer test. As we stated above, the officer should have made accommodations so that Bedway could contact his daughter. However, the officer did give Bedway the opportunity to attempt to contact an attorney, thus there is no evidence the officer deliberately disregarded the statute. Furthermore, because Bedway submitted to testing, he received the minimum sentence. Had he refused to submit, the penalty would have been significantly greater; therefore, he did not suffer any prejudice by the officer's actions.

## IV. CONCLUSION.

Reviewing the trial court's legal analysis under a *de novo* standard, we hold that a DUI suspect does have a statutory right to attempt to contact an attorney before submitting to a breathalyzer test, and the Commonwealth must make reasonable accommodations in attempting to further a suspect's efforts to do so. Furthermore, we now extend our holding in *Copley,* and hold that suppression of evidence may be appropriate when the Commonwealth violates a defendant's right to attempt to contact counsel as provided in KRS 189A.105. However, for the reasons stated above, suppression of Bedway's breath-

alyzer test results was an inappropriate remedy for the Commonwealth's failure to make reasonable accommodations in this case. Therefore, we agree with the Court of Appeals analysis that the Commonwealth must make reasonable accommodations for a DUI suspect seeking to contact an attorney under KRS 189A.105. However, we reverse the Court of Appeals holding, affirming the Jefferson Circuit Court's opinion, that suppression of Bedway's breathalyzer test results was appropriate in this case. Therefore, this matter is remanded to the Jefferson Circuit Court for reinstatement of the Jefferson District Court judgment.

All sitting. Minton, C.J., Abramson, Barber, Cunningham, Keller and Venters, JJ., concur. Noble, J., concurs in result only by separate opinion.

NOBLE, J., CONCURS IN RESULT ONLY:

I concur in the result reached by the majority in this case, but would analyze the issues in a more linear fashion. There are two stated issues: Did the police violate Bedway's statutory right to contact an attorney at the time he was to be administered a breath test, and if his statutory right was violated, is Bedway entitled to suppression of the breath-test results?

On the first question, it is clear that KRS 189A.105(3) provides that a suspect must be informed that he has "at least ten (10) minutes, but not more than (15) minutes to attempt to contact and communicate with an attorney." The statute is entirely silent on the method or means the suspect may use. In today's world, if available to them, most suspects would use their own cell phones. Lacking that, the jail invariably has a ground line phone available. Because the suspect is allowed to consult with the attorney he reaches, I fully agree with the majority that there

must be reasonable accommodations for a suspect to make contact and consult with an attorney, including providing a reasonable amount of privacy because such consultation can be a privileged communication. The factors the majority sets forth provide an excellent guide for determining the reasonableness of such accommodations.

However, I would simply address the second question about whether suppression must occur when a suspect's right to contact and communicate with an attorney has been thwarted by the police or the jailor by saying that a suspect does not have a constitutional right to counsel at that point in the testing, because by driving under his license to drive granted by the Commonwealth, he has bound himself to submit to the breath test, and regardless of what advice a lawyer may give him, he is still bound, even though he may physically refuse to comply. *See* KRS 189A.103 (stating that any person operating a motor vehicle "has given his or her consent to one (1) or more tests of his or her blood, breath, and urine, or combination thereof, for the purpose of determining alcohol concentration"). That consent, given by operating a motor vehicle in this state, is in no way qualified, other than that the officer must have "reasonable grounds to believe that" the suspect has been driving under the influence before he may be tested. *Id.* If the suspect nevertheless does refuse, that breach of his agreement will be remedied by immediate revocation of his driver's license, KRS 189A.105(1), and by enhancing his penalty if he is convicted, KRS 189A.010(5).

Consequently, whether a suspect has been allowed to contact and communicate with a lawyer or not, the police officer has not engaged in misconduct by administering the test, because the defendant was legally bound to take it. The officer has

simply done what the statute requires, and the suspect's consultation with a lawyer—or the lack thereof—has no bearing on the officer's duty or the suspect's obligation to take the test.

But it is also indisputable that a statutory right has been granted to the suspect in this situation to have the 10–to–15 minute period to contact and communicate with an attorney. The acts of the legislature have purpose, and are not *optional.* For that reason, I also agree with the majority that the analysis in *Copley v. Commonwealth,* 361 S.W.3d 902 (Ky. 2012), as applied to violations of criminal procedural rules, clearly and succinctly states the rule that applies here. Suppression may be warranted for a violation of a nonconstitutional right if there is prejudice to the suspect by his loss of the right, or if there is deliberate disregard of the statutory requirements.

The point I find somewhat difficult to get past is whether denying a suspect the right to attempt to contact and communicate with an attorney results in any prejudice to him. It is true that the actual advice an attorney can give a suspect at this point is limited. It does encompass, however, making the suspect aware of what his legal position is. I am confident that many Kentucky drivers are not aware that they are bound to submit to a breath test because they have performed the act of driving on a Kentucky highway under their driver's license. And, after my many years as a lawyer and on the bench, I am aware that attorneys often advise their clients to refuse the test. It is more difficult to prove actual driving under the influence without an objective measure of blood alcohol, and refusal could increase the chances of acquittal. And it is important for the suspect to be informed that if he refuses and gets convicted, his penalty will be significantly higher. So I believe a suspect could be prejudiced by being denied this statutory right.

But there is no evidence in the record of actual prejudice to Bedway because he did not get to contact an attorney, and the things that I perceive as potentially prejudicial here are particularly dependent on only subjective proof or after-the-fact assertions of what the suspect would have done. This evidence has little to no weight.

But what is clear to me is that there was no deliberate disregard of the statutory requirement, or bad faith, on the part of the officers. In fact, Bedway was informed of his right to contact an attorney and offered a phone book. While that was not much help to him since he could not remember the attorney's name, the officers did give him the opportunity. And the officers testified they believed the contact was *only* to be for an attorney, and Bedway wanted to call his daughter. I can certainly understand the officer's skepticism about such a call. It is equally foreseeable that a suspect would simply want to "phone home" to let his family know where he was or to arrange bail. That is not the right the statute gives him.

Consequently, I agree with the result reached by the majority, and would simply express my reasoning a little differently.