RENDERED: SEPTEMBER 24, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1549-MR

ANDREW GORDON                                                                 APPELLANT


v.            APPEAL FROM KENTON CIRCUIT COURT
         HONORABLE GREGORY M. BARTLETT, JUDGE
                   ACTION NO. 20-CI-01252


COMMONWEALTH OF KENTUCKY                                                       APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, GOODWINE, AND LAMBERT, JUDGES.

COMBS, JUDGE: Andrew Gordon appeals an order of the Kenton Circuit Court
that granted the Commonwealth's petition for a writ of prohibition against the
Honorable Douglas Grothaus, Kenton District Court Judge. The circuit court order
prohibited enforcement of a suppression order entered by the district court and
directed the district court to permit the introduction of the results of a blood
alcohol test at Gordon's trial on the charge of driving under the influence. Gordon

contends that police violated his right under the provisions of KRS[1] 189A.105(3) "to attempt to contact and communicate with an attorney" before submitting to the blood draw. He argues that police erred by failing to ensure that he had access to a telephone and the means by which to find an attorney's telephone number. He contends that the circuit court erred by failing to hold that the incriminating evidence must be suppressed as a result of the violation of the statute.

After our review, we conclude that the circuit court did not err by concluding that Gordon's statutory rights were not violated. Suppression of the evidence was not warranted. We affirm the circuit court's order granting the writ.

In the early morning hours of March 15, 2020, Kenton County Patrol Officer T. Hogan was dispatched to the scene of a single vehicle crash. According to the citation prepared by Officer Hogan, first responders were on scene when he arrived. First responders indicated to Officer Hogan that Gordon was near the wrecked vehicle when they arrived. They reported to Officer Hogan that Gordon admitted that he had fallen asleep while driving and had missed a stop sign causing him to wreck the vehicle on the railroad tracks. Gordon told paramedics that he had consumed eight or nine alcoholic drinks prior to the crash. Gordon stated to officers that he had just left Peecox II bar where he had consumed five or six beers. Gordon indicated that he had consumed his final beer about an hour before the

---

[1] Kentucky Revised Statutes.

wreck. Gordon was transported to a local hospital. Field sobriety tests were not conducted.

At the hospital, Officer Hogan read Gordon the Commonwealth's implied consent statute, KRS 189A.103, and informed him of the consequences of submitting to and withdrawing his consent to a blood test as mandated by the provisions of KRS 189A.105. He also advised Gordon that he had a statutory right to attempt to contact and communicate with an attorney and that he would be afforded an opportunity to do so before submitting to a blood alcohol test. Gordon did not attempt to contact an attorney. Based on the results of the blood alcohol test, Gordon was cited for driving under the influence, first offense, pursuant to the provisions of KRS 189A.010.

Before trial, Gordon moved to suppress the results of the blood alcohol test, arguing that Officer Hogan failed to accommodate his decision to attempt to contact and communicate with an attorney. Officer Hogan was the only witness called at the subsequent suppression hearing conducted by the Kenton District Court. Video footage captured by Hogan's body camera was also introduced.

At the suppression hearing, Gordon's attorney argued that Gordon was injured, was lying in a hospital bed, and had no ability to find an attorney's telephone number or to place a call. He contended that Officer Hogan had a

statutory obligation to provide him with these resources. The Commonwealth asserted that Officer Hogan could not recall whether Gordon had responded when Hogan initially asked whether he wanted to attempt to contact and communicate with an attorney. No audible response from Gordon could be heard on the recording. It contended that when Officer Hogan sought a response a second time, Gordon indicated that he did not want to attempt to contact an attorney. The Commonwealth argued that under these circumstances, the requirements of the statute were clearly not violated.

The district court found that Gordon's response to Officer Hogan's initial questioning was not clear from the body-camera recording. Nevertheless, the court found that Gordon had, in fact, indicated that he wanted an opportunity to contact an attorney. The district court concluded that while Officer Hogan had acted in good faith, Gordon's statutory right to attempt to contact an attorney before the blood alcohol test was administered had been violated by Officer Hogan's failure to provide him with necessary accommodations. It granted Gordon's motion to suppress.

The Commonwealth filed a petition for a writ of prohibition in circuit court, arguing that the interlocutory order suppressing the evidence was erroneous and that great injustice and irreparable harm would follow if it were enforced. The circuit court agreed and granted the writ. This appeal followed.

When a court is acting within its jurisdiction -- as is undisputed in this case, a writ of prohibition may be granted only where: (1) there is no adequate remedy by appeal or otherwise and (2) the petitioner will suffer irreparable injury if the writ is not granted. *Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004). These conditions are satisfied when a trial court errs in granting a defendant's motion to suppress. *Commonwealth v. Bell*, 365 S.W.3d 216 (Ky. App. 2012). Review of a trial court's ruling on a suppression motion is two-fold. First, the trial court's factual findings will not be disturbed if supported by substantial evidence. *Stewart v. Commonwealth*, 44 S.W.3d 376 (Ky. App. 2000). Second, whether the trial court correctly applied the law to the facts is reviewed *de novo*. *Id.*

The Commonwealth's implied consent statute, KRS 189A.103, provides that where an officer has reasonable grounds to believe that a person has violated the provisions of KRS 189A.010 by operating a vehicle under the influence of alcohol, the driver has by implication given his consent to one or more tests of his blood, breath, and urine for the purpose of determining alcohol concentration. The statute at issue in this appeal, KRS 189A.105, formerly provided, in relevant part, as follows:

> (1) A person's refusal to submit to tests under KRS 189A.103 shall result in revocation of his driving privilege as provided in this chapter.
>
> (2) (a) At the time a breath, blood, or urine test is requested, the

-5-

person shall be informed:

1. That, if the person refuses to submit to such tests, the fact of this refusal may be used against him in court as evidence of violating KRS 189A.010 and will result in revocation of his driver's license, and if the person refuses to submit to the tests and is subsequently convicted of violating KRS 189A.010(1) then he will be subject to a mandatory minimum jail sentence which is twice as long as the mandatory minimum jail sentence imposed if he submits to the tests, and that if the person refuses to submit to the tests his or her license will be suspended by the court at the time of arraignment, and he or she will be unable to obtain an ignition interlock license during the suspension period; and

2. That, if a test is taken, the results of the test may be used against him in court as evidence of violating KRS 189A.010(1), and that although his or her license will be suspended, he or she may be eligible immediately for an ignition interlock license allowing him or her to drive during the period of suspension and, if he or she is convicted, he or she will receive a credit toward any other ignition interlock requirement arising from this arrest.

KRS 189A.105(3) further provided:

During the period immediately preceding the administration of any test, the person shall be afforded an opportunity of at least ten (10) minutes but not more than fifteen (15) minutes to attempt to contact and communicate with an attorney and shall be informed of this right. Inability to communicate with an attorney during this period shall not be deemed to relieve the person of his obligation to submit to the tests and the

-6-

penalties specified by KRS 189A.010 and 189A.107 shall remain applicable to the person upon refusal. Nothing in this section shall be deemed to create a right to have an attorney present during the administration of the tests, but the person's attorney may be present if the attorney can physically appear at the location where the test is to be administered within the time period established in this section.

Pursuant to this authority, Gordon argues that Officer Hogan violated his right to attempt to contact and communicate with an attorney before the blood alcohol test was administered. He contends that Officer Hogan's failure to provide him with a means by which he could attempt to contact and communicate with an attorney constitutes a violation of the statute. He relies upon our decision in *Ferguson v. Commonwealth*, 362 S.W.3d 341 (Ky. App. 2011).

In *Ferguson*, the defendant was arrested on suspicion of drunk driving. As a result, Ferguson's purse (which held her cell phone) was confiscated. After she was informed of her right to attempt to contact an attorney within the ten- to fifteen-minute window preceding the breathalyzer test, Ferguson told officers that her attorney's phone number was stored in her cell phone. She requested access to the phone. The officers denied the request. Instead, Ferguson was allowed access to a collect-call-only telephone on the wall in the jail. Ferguson then submitted to the breathalyzer test. After her conviction, Ferguson appealed.

On appeal, we held that Ferguson's inability to contact and communicate with an attorney did not relieve her of the obligation to submit to the

-7-

breath test but that the provisions of KRS 189A.105(3) clearly granted Ferguson the right to attempt to communicate with an attorney. We concluded that this right was violated by the officers' failure to provide Ferguson reasonable access to her cell phone (which was in the immediate area) for the limited purpose of procuring an attorney's phone number or attempting to contact him. However, we specifically denied that an officer "need go beyond what is reasonably accessible in the immediate area to permit an individual to attempt to contact an attorney." *Id.* at 344 n.2.

In *Commonwealth v. Bedway*, 466 S.W.3d 468 (Ky. 2015), the Supreme Court of Kentucky agreed with our analysis of KRS 189A.105(3) in *Ferguson*. It affirmed our opinion that police officers must make reasonable accommodations to further a suspect's effort to attempt to contact an attorney before submitting to testing. In *Bedway*, the Court considered whether an arresting officer violated the suspect's statutory right to attempt to contact an attorney by refusing Bedway's request to call his daughter in an effort to get the name of a specific attorney from her. The Commonwealth argued that the officer provided Bedway with access to a telephone and phonebooks and showed him a list of attorneys' names and numbers at the jail and that this conduct was sufficient to fulfill the statutory duty. The Supreme Court of Kentucky disagreed with the Commonwealth's position and held that Bedway's request to call his daughter to

gain information about an attorney was reasonable and should have been accommodated. However, the Court rejected the trial court's decision to suppress the breathalyzer test results as a "penalty" for having failed to accommodate Bedway's request.

In the analysis that followed, the Supreme Court of Kentucky observed that suppression of evidence as "fruit of the poisonous tree" ordinarily applies only to searches that were carried out in violation of a defendant's constitutional rights and not a violation of his statutory rights. It held that suppression of Bedway's breathalyzer test results was inappropriate for several reasons.

First, the Court noted that by virtue of the provisions of KRS 189A.103 and his decision to drive in the Commonwealth, Bedway impliedly consented to tests of his blood, breath, and urine. "Therefore, even if a Constitutional right to attempt to contact counsel existed, Bedway waived that right by operating a motor vehicle in the Commonwealth." *Bedway*, 466 S.W.3d at 477. Next, the Court noted that KRS 189A.105(3) specifically provides that the inability to contact an attorney does not relieve a person of the obligation to submit to testing or suffer the consequences. Next, the Court cited *Beach v. Commonwealth*, 927 S.W.2d 826, 828 (Ky. 1996), in which it held that "[e]xclusion of evidence for violating the provisions of the implied consent statute

-9-

is not mandated absent an explicit statutory directive." *Bedway*, *supra* at 477.

There is no statutory directive to that effect. The Court observed that by

submitting to mandatory testing, Bedway avoided the automatic and severe

consequences that the statute imposes upon a driver who withdraws his consent to

testing.

Last, the Court cited its holding in *Copley v. Commonwealth*, 361

S.W.3d 902, 907 (Ky. 2012), as follows:

> [W]hen a criminal procedur[al] rule is violated but the
> defendant's constitutional rights are not affected,
> suppression may still be warranted if there is (1)
> prejudice to the defendant, in the sense that the search
> might not have occurred or been so abusive if the rule
> had been followed or (2) if there is evidence of deliberate
> disregard of the rule.

*Bedway*, 466 S.W.3d at 477. The Court extended this rule to a violation of the

statutory mandate of KRS 189A.105. The Court held that where police

deliberately disregard the requirement to permit a defendant to attempt to contact

an attorney and the defendant is prejudiced as a result of that deliberate disregard,

evidence seized thereafter may be suppressed. The Court concluded that the

officer had not deliberately disregarded the requirements of the statute because he

had given Bedway an opportunity to attempt to contact an attorney. Furthermore,

Bedway was not prejudiced by the officer's violation of the statute's requirements.

Instead, by virtue of his decision not to withdraw his consent to testing, Bedway received the minimum sentence.

In *Commonwealth v. Morgan*, 583 S.W.3d 432 (Ky. App. 2019), we applied the new *Bedway* rule to our analysis of a defendant's challenge to the introduction of a breath test result. Morgan was charged with driving under the influence. After he was arrested, he was transported to the Campbell County Detention Center. He submitted to a breathalyzer test.

Prior to trial, Morgan filed a motion to suppress, arguing that the arresting officer deliberately disregarded the provisions of KRS 189A.105(4) by failing to read a second required warning concerning his right to an independent blood test. The Commonwealth contended that Morgan had presented no evidence to indicate that the officer had deliberately disregarded the statutory mandate. The district court found that because Morgan then left to go to a restroom, his absence prevented the second required warning. Therefore, it concluded that the officer did not act in bad faith and denied the motion to suppress.

After he entered a conditional guilty plea, Morgan appealed to the circuit court. Concluding that the district court's finding did not support its conclusion, the circuit court reversed.

On appeal, we analyzed the relevant provisions of KRS 189A.105(4). We noted that where a suspect has not withdrawn his consent to the requested

alcohol or substance test and the test has been administered, the statute provides that the officer **must** give a second warning of the right to an independent test. The statute specifically requires the officer to ask, "Do you want such a test?" and to make "reasonable efforts to provide transportation to the tests." Following our analysis, we concluded that the circuit court had not erred in reversing the district court's denial of the motion to suppress.

We determined that the uncontested facts showed that the arresting officer failed to give the second blood test warning, including specifically asking Morgan whether he desired an independent blood test immediately after he had submitted to the breath test. We agreed that there was no reasonable basis for the officer's decision not to read the second warning. "The officer did not testify that he forgot to give the second warning, but rather that he did not read the warning because he was in a rush to get Morgan to the restroom." *Morgan*, 583 S.W.3d at 435. Consequently, we held that the officer had violated the requirements of the statute.

We then considered whether the officer's failure to comply with the statute's provisions required suppression of the breath test evidence. We concluded that the proof of the officer's deliberate disregard for the requirements of the statute was shown by his decision to mark a box on the implied consent form indicating that Morgan had declined an independent blood test "when this was

never actually the case." *Id.* In light of the officer's deliberate disregard for the statute's requirements, we affirmed the circuit court's decision that suppression of the evidence was proper.

In the case now before us, we must first decide whether Officer Hogan violated the provisions of the statute by failing to make "reasonable accommodations in attempting to further a suspect's efforts to [attempt to contact an attorney before submitting to a statutorily required blood test]." *Bedway*, 466 S.W.3d at 477. Based upon the uncontested facts adduced at the suppression hearing, we conclude that he did not.

At the suppression hearing, Officer Hogan testified that Gordon was in an ambulance when he arrived at scene and was subsequently transported to the hospital. He confirmed that he requested that Gordon's blood be tested at the hospital. He stated that Gordon was able to communicate with him from his hospital bed.

Next, the Commonwealth played the body-camera footage. It captured a view of the hospital room wall; Gordon is not visible on the recording. Initially, there were at least four individuals in the room. The footage began with the voice of Officer Hogan reading the implied consent statute to Gordon. After he advised Gordon of the consequences of either failing to or consenting to a blood alcohol test, Officer Hogan could be heard telling Gordon that he would be

-13-

afforded at least ten minutes but not more than fifteen minutes to attempt to contact and communicate with an attorney. Hogan asked Gordon if he wished to contact an attorney. No response could be heard. It sounded as though Hogan replied, "so you got ten minutes to get that done as we're waiting for you, for you to get your . . . in, alright?" From the body-camera footage, Gordon's response was largely indecipherable, but it might have included, "okay."

Immediately thereafter, a first-responder appeared at the door of Gordon's room. He told Gordon that his mother was aware that he had been transported to the hospital, "but we are not sure that she is coming up here, okay?" The first-responder told Gordon to take care, and before exiting, specifically asked if he could do anything for Gordon. A reply could not be deciphered.

After a brief interchange between a nurse (presumably) and another individual in the room, Officer Hogan could be heard asking, "I'm sorry?" Again, Gordon's response was unintelligible. As a member of medical staff entered the room, Officer Hogan could be heard asking Gordon, "So you said you do not want to contact an attorney?" Gordon mumbled a response apparently agreeing with Officer Hogan, who confirmed by asking, "You do not want to? Okay." At this point, Gordon's attorney interrupted the replay of the recording to announce that he would "stipulate to the rest. That's the whole issue." The Commonwealth stopped the replay of the recording.

Officer Hogan resumed his testimony indicating that Gordon was never placed under arrest, never restrained, and never transported to jail. He indicated that Gordon never asked him for a telephone or access to his property. Officer Hogan did not know whether there was a telephone in the hospital room. On cross-examination, Officer Hogan testified that he did not know whether Gordon had a cell phone or any personal property in his possession or if the ambulance personnel had taken it. Officer Hogan indicated that police did not have access to Gordon's personal property. Upon questioning by the court, Officer Hogan agreed that Gordon could not have walked down the hall to use a payphone. Hogan explained that he did not know the extent of Gordon's injuries and did not know whether he would have been permitted by hospital staff to stand and walk.

When Officer Hogan read Gordon the implied consent statute and advised him of his right to attempt to contact and communicate with an attorney, Gordon's movement and activity were not under Officer Hogan's control. Gordon was not under arrest; he was not restrained. Nor were Gordon's environment or his personal property under Officer Hogan's control. Presumably Gordon's property was under the control of either first-responders or hospital staff -- both of whom made appearances in Gordon's room in the brief interval captured on Officer Hogan's body-camera, the first-responder asking specifically if he could help Gordon with anything he needed.

Although he was advised of the right to do so, Gordon **made no discernible attempt to contact an attorney** before expressly declining the opportunity to do so. As there are reasonable grounds to believe that Gordon remained under the influence of alcohol throughout this period, it is reasonable to assume that his ability to make decisions was impaired. Nevertheless, these are not circumstances under which it can be said that Officer Hogan failed to make reasonable accommodations to further Gordon's effort to attempt to contact an attorney. He did not violate Gordon's right to attempt to contact counsel as provided by the provisions of KRS 189A.105.

We cannot conclude that suppression of the blood alcohol test evidence was justified. The district court found from the evidence that Officer Hogan was -- at all times -- acting in good faith, and Gordon failed to show that he was prejudiced in any manner.

Therefore, we affirm the order of the Kenton Circuit Court granting the petition for a writ of prohibition.

ALL CONCUR.

BRIEF FOR APPELLANT:

Joshua M. McIntosh
Covington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Christopher S. Nordloh
Special Assistant Attorney General of
Kentucky
Covington, Kentucky